**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **VALANCOURT BOOKS, LLC,** | ) | |
| | ) | **Civil Action No. 1:18-cv-01922-ABJ** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KARYN A. TEMPLE, in her official capacity** | ) | |
| **as Register of Copyrights, United States** | ) | |
| **Copyright Office** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' COMBINED MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION**
**TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.    The Deposit Provision in 17 U.S.C. § 407 Is Consistent With the Takings Clause as Applied to Plaintiff............................................................................................. 2

      A.    Because the Deposit Provision Forms Part of a Comprehensive Statutory Framework Establishing Conditions in Exchange for a Voluntarily-Sought Government Benefit, the Provision Is Consistent With the Takings Clause.......................................................................................................... 3

      B.    Plaintiff Has Taken Voluntary Action to Receive the Benefits Bestowed by Federal Copyright Law, and Has Declined to Take Action to Opt Out of Receiving Such Benefits ............................................................................ 10

          1.    Plaintiff Has Taken Affirmative Steps to Avail Itself of the Benefits of the Federal Copyright Framework..................................................... 11

          2.    Plaintiff Has Declined to Opt Out of Participation in the Statutory Copyright Framework........................................................................ 14

II.    The Deposit Requirement Is Consistent With the First Amendment..................... 18

      A.    The Deposit Requirement Does Not Place an Unconstitutional Restriction on Speech................................................................................................... 18

          1.    The Deposit Requirement Does Not Implicate Any First Amendment Concerns ....................................................................................... 18

          2.    In the Alternative, the Deposit Requirement Satisfies Intermediate Scrutiny as Applied to Plaintiff .................................................... 20

      B.    The Deposit Requirement Is Not Substantially Overbroad. ........................ 25

CONCLUSION............................................................................................................... 27

i

## INTRODUCTION

When Congress creates statutory benefits not bestowed at common law, it preserves significant discretion to prescribe conditions on the enjoyment of those benefits.  And if an entity takes voluntary action to receive such legislatively-created benefits, and declines to take available action to opt out of its receipt, then it must satisfy those conditions in exchange for receiving them.  Here, in exchange for the array of benefits that Congress grants to owners of copyright, book publishers that willingly participate in the federal copyright framework must deposit two copies of published books with the Library of Congress.  This requirement originated with the First Congress and was signed into law by President Washington.  Though amended repeatedly, it has formed part of American law for over two hundred years.  As part of that extensive history, this provision was long ago recognized as valid by the Supreme Court, which held that "when the legislature are about to vest an exclusive right in an author. . . they have the power to prescribe the conditions on which such a right shall be enjoyed."  *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663-64 (1834).

Plaintiff has asked this Court to be the first to strike down this longstanding aspect of American copyright law, and a vital element of the establishment of a national library, but its arguments are unavailing.  A premise underlying many of Plaintiff's arguments is that Plaintiff does not seek the benefits of copyright protection, and that the burdens of the deposit requirement are chilling its First Amendment activity in the form of publication of books.  If Plaintiff wishes to forfeit the protections of copyright and avoid the deposit requirement, it can do so now and end this litigation.  Given Plaintiff's evident unwillingness to do so, its suggestion that the copyright scheme is an unwanted burden ring hollow.

Plaintiff specifically contends that as applied to it, this provision effects an unlawful taking. As explained in Defendants' opening brief, and as demonstrated below, Plaintiff has taken affirmative steps to avail itself of the benefits of federal copyright protection, and has chosen not to opt out of receiving these benefits. Its participation in this voluntary exchange does not raise any takings issues. Additionally, Plaintiff argues that the deposit provision constitutes a content-based restriction on speech, and that it is substantially overbroad. Because the requirement is a cost attendant to the receipt of statutory copyright protection, rather than any mandatory requirement associated with First Amendment activity, this contention fails for substantially the same reasons Plaintiff's Fifth Amendment claims fail. But in any event, the provision is content-neutral, and Plaintiff has failed to demonstrate that the provision restricts or chills its own First Amendment interests, or the interests of third parties not before the Court. Defendants therefore respectfully request that the Court enter summary judgment in their favor.

## ARGUMENT

I.    **The Deposit Provision in 17 U.S.C. § 407 Is Consistent with the Takings Clause as Applied to Plaintiff.**

As explained previously, Plaintiff's takings claim has no merit because the deposit requirement is a longstanding condition on the provision of a voluntarily-sought government benefit. It thus does not constitute a taking without just compensation. Mem. in Supp. of Def. Mot. for Summ. J. at 12-24, ECF No. 17-1 ("Def. Mem."). Plaintiff challenges this conclusion on a number of grounds, including its disagreement with the Ninth Circuit's decision in *Ladd v. Law & Technology Press*, 762 F.2d 809 (9th Cir. 1985), and its belief that it has not taken any voluntary action to avail itself of copyright production, despite its stipulation to the contrary. *See* Mem. in Opp. to Def. Mem. and in Supp. of Pl. Cross-Mot. for Summ. J., ECF No. 18-1 ("Pl. Opp."). As will be explained in more detail below, none of these arguments has merit.

### A.   Because the Deposit Provision Forms Part of a Comprehensive Statutory Framework Establishing Conditions in Exchange for a Voluntarily-Sought Government Benefit, the Provision Is Consistent With the Takings Clause.

The Supreme Court has long recognized that copyright protection provides a statutory benefit that would not otherwise exist at common law and as such, Congress may "prescribe the conditions on which such right shall be enjoyed." *Wheaton*, 33 U.S. at 663.  In upholding the version of the deposit requirement contained in the earliest federal copyright statute, the court explained that the right to copyright protection "does not exist at common law" but instead originated "under the acts of congress." *Id*.  Consequently, "[n]o one can deny that when the legislature are about to vest an exclusive right in an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed; and that no one can avail himself of such right who does not substantially comply with the requisitions of the law." *Id*. at 663-64. The deposit requirement constitutes one of these conditions on the bestowal of a valuable statutory right—one that has existed in some form since the first Congress in 1790.  *See* Def. Mem. at 13; *see also Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 57 (1884) ("[W]hen it is remembered that the rights thus established have not been disputed during a period of nearly a century, it is almost conclusive.").

Far from overruling this Supreme Court precedent, modern cases have reaffirmed the principles underlying the Court's decision in *Wheaton*.  In *Ruckelshaus v. Monsanto Company*, 467 U.S. 986 (1984), the Supreme Court held that Congress may condition the provision of a voluntarily-sought government benefit on the furnishing of certain private property if that condition rationally relates to a legitimate government interest. *Id*. at 1004-08.  The Court rejected a challenge to a comprehensive regulatory statute mandating that companies provide certain trade secrets to a federal agency in exchange for the ability to receive the economic

3

benefits of registering certain pesticides for sale in interstate commerce.  It concluded that "as long as Monsanto is aware of the conditions under which the data are submitted, and the conditions are rationally related to a legitimate Government interest, a voluntary submission of data by an applicant in exchange for the economic advantages of a registration can hardly be called a taking."  *Id*. at 1007 (citations omitted).  Similarly, here, Congress has enacted a comprehensive statutory framework to govern the receipt of copyright protection, and the furnishing of certain personal property (two copies of a copyrighted work) is part of the exchange for that voluntarily-obtained government benefit.

For this very reason, the Ninth Circuit previously rejected a takings claim that, like Plaintiff's, was asserted by a book publisher seeking to invalidate the deposit requirement following a statutory amendment.  *Ladd*, 762 F.2d at 812-15.  Citing *Wheaton* and *Monsanto*, the Ninth Circuit explained that "Congress indubitably can place conditions on the grant of a statutory benefit" such as copyright protection.  *Id*. at 813.  The court agreed with the government's argument that the deposit requirement "is not a taking" but "a condition which Congress may legitimately attach to the grant of a benefit."  *Id*.  Therefore, as here, "[b]y voluntarily choosing to avail itself of the benefit," the publisher in *Ladd* "ha[d] accepted the condition of deposit."  *Id*.  The court also determined that the deposit provision is rationally related to the statutory benefit of copyright protection because "[t]he Copyright Clause grants copyright protection for the purpose of promoting the public interest in the arts and sciences," and "[c]onditioning copyrights on a contribution to the Library of Congress furthers this overall purpose."  *Id*. at 814.

Plaintiff disagrees with the result reached by the Supreme Court and the Ninth Circuit, arguing that the deposit requirement is not "a condition placed on a government benefit," for two

4

main reasons.  First, Plaintiff argues that *Ladd* is inapposite to the present situation because

"[m]odern copyright law does not condition the enjoyment of copyright protection on any

voluntary act by anyone."  Pl. Opp. at 15.  Second, Plaintiff argues that the Supreme Court's

decision in *Horne v. Department of Agriculture*, 135 S. Ct. 2419 (2015), requires a different

result from that reached by the Ninth Circuit in *Ladd*.  Pl. Opp. at 13.  But Plaintiff fails to

demonstrate how the evolution of modern copyright law or the decision by Congress to amend

the Copyright Act in compliance with the Berne Convention requires a different outcome here

than that reached by the Supreme Court in *Wheaton* or the Ninth Circuit in *Ladd*.

Under modern copyright law, the copyright holder remains confronted with the quid pro

quo that the Supreme Court blessed in *Wheaton*: either choose to deposit copies with the Library

and enjoy the protection of copyright or divest oneself of the copyright interest and thereby

forego the protection of the statutory framework along with the accompanying obligation to

deposit.  The Ninth Circuit in *Ladd* already had to grapple with express statutory language in the

Copyright Act providing that "[n]either the deposit requirements of this subsection nor the

acquisition provisions of subsection (e) are conditions of copyright protection."  762 F.2d at 814.

Nevertheless, the court held that the constitutional analysis is not altered by the fact that the

deposit provision "by its own terms is no longer a condition of copyright," "in the sense that a

copyright cannot be forfeited by failure to deposit the work."  *Id.*; *see also* Def. Mem. at 16-17.

The Ninth Circuit recognized that Congress had altered the penalty from copyright forfeiture to a

fine not to change the fundamental nature of the copyright framework, but instead to improve the

effectiveness of the deposit requirement given that the prospect of "[a] realistic fine," together

with other statutory incentives, "seems likely to produce a *more effective* deposit system."  *Ladd*,

762 F.2d at 813 (quoting H.R. Rep. No. 94-1476, at 150 (1976)) (emphasis added); *see also* S.

Rep. No. 100-352, at 45 (1988) ("[A]lthough deposit is not a condition of copyright protection, it is, in a sense, an element of the 'quid pro quo' paid by authors and copyright owners for the benefits they enjoy as copyright proprietors."), *reprinted in* 1988 U.S.C.C.A.N. 3706, 3742.

The only relevant difference between the version of 17 U.S.C. § 407 upheld in *Ladd* and the current version is that the latter no longer applies only where copyright owners include a notice of copyright. But as explained previously, this amendment—part of the relaxation of formality requirements that was achieved by the 1988 Berne Amendments—does not alter the fundamental nature of the federal copyright framework. Def. Mem. at 17-18. Congress made clear that "[t]he elimination of copyright notice as a factor in subjecting works to mandatory deposit has no constitutional significance" because it "remains true that only those works published in the United States in which copyright is claimed are subject to mandatory deposit." H.R. Rep. No. 100-609, at 44 (Ex. 1 to Def. Mem.). Though forfeiture no longer occurs by operation of statute if the copyright holder declines to deposit, the deposit provision remains a condition attached to the benefit of the enjoyment of the statutory benefit of copyright protection. The modification of the copyright-notice framework thus does not change the fundamental balance of the federal copyright framework. *See also Kahle v. Ashcroft*, No. C-04-1127 MMC, 2004 WL 2663157, at *16-18 (N.D. Cal. Nov. 19, 2004) (rejecting allegation that recent amendments to Copyright Act, including amendment of deposit provision, had altered the traditional contours of copyright protection), *aff'd*, 487 F.3d 697 (9th Cir. 2007). Consequently, Plaintiff's argument that *Ladd* is no longer apposite because of the 1988 Berne Amendments is not persuasive. Pl. Opp. at 14-15.[1]

_____

[1] Plaintiff's brief also advances two inaccurate contentions about the 1988 Berne Amendments. First, Plaintiff mistakenly states that it is a result of the Berne Convention that "copyright no longer hinges on registration." Pl. Opp. at 8. The 1976 Copyright Act created the current system

Plaintiff repeatedly suggests that the deposit requirement is not a condition placed on a government benefit because copyright offers no benefit unless the owner registers the copyrighted work. *See, e.g.*, Pl. Opp. at 23 (describing the "'benefit' Plaintiff actually derives from copyright" as "effectively nonexistent"); *see also id*. at 5. But this is factually incorrect. Copyright ownership consists of a bundle of exclusive rights that empower the copyright owner to exclude others from certain uses of its work, *see* 17 U.S.C. § 106; as Plaintiff itself acknowledges, these rights begin at the point of creation, *id*. § 102(a), as a product of the Copyright Act. *See Wheaton*, 33 U.S. at 661 ("Congress, then, by [the Copyright Act of 1790], instead of sanctioning an existing right, as contended for, created it."). Even absent registration, copyright owners such as Plaintiff possess a number of benefits because of the existence of federal copyright protection. For example, the anti-circumvention protection measures in 17 U.S.C. § 1201 are available to copyright owners regardless of whether they have registered their copyrights, as is criminal copyright protection. *See id*. § 506.[2] Although registration of a copyright may provide additional benefits for U.S. works, such as the right to initiate litigation for violations of the copyright owner's exclusive rights, the existence and benefits of copyright

---

in which copyright exists at the moment a work is created and fixed in tangible form. *See* H.R. Rep. No. 100-609, at 40-41 (explaining that with one minor exception, under then-current (1988) law, registration was "permissive" rather than mandatory in order to receive copyright protection). Second, Plaintiff incorrectly alleges that the deposit provision is inconsistent with the Berne Convention. Pl. Opp. at 17 n.5. As Congress explained, the deposit provision is not a formal barrier to copyright protection because "noncompliance with the mandatory deposit requirement does not result in the forfeiture of any copyright protection," and is thus compatible with the Convention. H.R. Rep. No. 100-609, at 44.

[2] Similarly, the "notice-and-takedown" provisions allowing for removal of unauthorized copyrighted material online are not limited to registered works. *See id*. § 512(c). Moreover, Plaintiff could seek remedies for copyright infringement by registering its works now, even if the infringement had occurred prior to registration, as long as the relevant statute of limitations has not expired.

belong to the copyright holder even absent registration. After all, potential infringers do not necessarily know that a copyright has not been registered, such that the mere act of noticing a work as containing copyrighted material may carry a deterrent effect even absent registration.

Additionally, Plaintiff's reliance on the Supreme Court's decision in *Horne* is misplaced. *See* Def. Mem. at 23-24. *Horne* invalidated the provisions of the Agricultural Marking Agreement Act that required raisin farmers to set aside a percentage of their crop in order to increase the market price of raisins precisely because the Court did not consider it to be the kind of "voluntary exchange" at issue here. 135 S. Ct. at 2430; *see id.* at 2430-31 ("Selling produce in interstate commerce, although certainly subject to reasonable government regulation, is . . . not a special governmental benefit that the Government may hold hostage, to be ransomed by the waiver of constitutional protection."). The Court specifically distinguished *Monsanto* on the grounds that "as a condition to receiving a permit to sell [their] products," the *Monsanto* plaintiffs had "received a 'valuable Government benefit' in exchange." *Id.* at 2430 (quoting *Monsanto*, 476 U.S. at 1007). As explained in Defendants' opening brief and below, Plaintiff has taken voluntary action to avail itself of the statutory benefits of copyright protection. *See* Def. Mem. at 19-22; *infra* I.B. Plaintiff may thus be "require[d]" to provide certain personal property "in which [it] ha[s] a property interest" in exchange for the "valuable Government benefit" vested in copyright holders. *Horne*, 135 S. Ct. at 2430.

Moreover, contrary to Plaintiff's representation, *Horne* did not limit *Monsanto*'s holding to cases in which the government benefit at issue authorized actions "that would otherwise be illegal." Pl. Opp. at 16. Rather, *Horne* stated that the *Monsanto* plaintiffs "were not subjected to a taking because they [had] received a 'valuable Government benefit' in exchange" for providing information in which they had a property right. 135 S. Ct. at 2430 (citation omitted). Though

8

*Horne* described the specific permit at issue in *Monsanto* as involving "dangerous chemicals," *id.*, it did not limit *Monsanto*'s holding to cases involving such substances, any more than it limited *Monsanto*'s holding to cases involving the Environmental Protection Agency (the defendant-agency in that case).  Rather, *Horne* distinguished *Monsanto* on the grounds that a "valuable Government benefit" had been bestowed as part of a "voluntary exchange" in that case.  *Id.*; *see also Philip Morris, Inc. v. Reilly*, 312 F.3d 24, 46 (1st Cir. 2002) (recognizing that *Monsanto*'s "holding depended on the fact that Monsanto submitted its data in exchange for a valuable government benefit: a registration"); *Southeast Ark. Hospice, Inc. v. Burwell*, 815 F.3d 448, 450 (8th Cir. 2016) (rejecting takings claim by operator of hospice care facilities who "voluntarily chose to participate in the Medicare hospice program" and distinguishing *Horne*), *cert. denied*, 137 S. Ct. 114 (2016).  Because a valuable governmental benefit has been bestowed here as part of a voluntary statutory exchange, *Monsanto* controls the outcome of this case.[3]

        Nor is Plaintiff persuasive in its attempt to conflate the statutory copyright framework here with the Agricultural Marking Agreement Act scheme struck down in *Horne*.  Pl. Opp. at 17.  By contrast with the factual circumstances here, the raisin penalty in *Horne* was involuntary. *Horne* specifically rejected the notion that "raisin growers voluntarily choose to participate in the raisin market," reasoning that "[s]elling produce in interstate commerce" was a "basic and familiar use[] of property."  135 S. Ct. at 2430; *see also id.* (describing renting property or building on property as other such familiar uses).  By contrast to participation in the agricultural market, however, the Supreme Court has long emphasized that the limited monopoly rights of copyright protection are a statutory benefit rather than a common-law right, *see, e.g., Wheaton*,

---

[3] As explained previously, Plaintiff has asserted no challenge to the registration deposit requirement in 17 U.S.C. § 408.  Def. Mem. at 10 n.6.  Indeed, Plaintiff has conceded that the registration deposit requirement is constitutional under *Horne* and *Monsanto*.  Pl. Opp. at 23.

33 U.S. at 657; thus, publishers may participate in the market for published books without enjoying the benefits of copyright protection.  Plaintiff has taken voluntary action to receive the limited monopoly rights bestowed by the federal copyright framework and has declined to take action to opt out of the receipt of those benefits.  *See infra* I.B.  Congress may thus condition Plaintiff's receipt of these limited monopoly rights on compliance with the deposit provision.

> **B.      Plaintiff Has Taken Voluntary Action to Receive the Benefits Bestowed by Federal Copyright Law, and Has Declined to Take Action to Opt Out of Receiving Such Benefits.**

*Monsanto* held that the furnishing of certain personal property may form part of a voluntary exchange for receiving a valuable governmental benefit.  467 U.S. at 1004-08.  Here, as explained previously and as demonstrated by the undisputed facts in this case, Plaintiff has taken voluntary, affirmative steps to avail itself of the statutory benefits vested in copyright holders by Congress.  Def. Mem. at 19-22.   Plaintiff's obligation to deposit copies results from its voluntary decision to obtain the benefits associated with copyright protection by means of an affirmative decision to contract with third parties to obtain the rights to use copyrightable materials in their works.  *Id*. at 19-21.  Additionally, though copyright notice is not required to enjoy copyright protection, Plaintiff has, to the best of its knowledge, voluntarily included a notice of copyright in each of the books at issue in this case, thus asserting its entitlement to this statutory right against all third parties, including would-be innocent infringers.  *Id*. at 21-22.  Finally, in addition to taking voluntary action to receive the benefits afforded under the federal copyright framework, Plaintiff has declined to opt out of receiving such benefits.  *Id*. at 22.  Because Plaintiff has "voluntarily chos[en] to avail itself of the benefit" vested in copyright holders, it has thereby "accepted the condition of deposit."  *Ladd*, 762 F.2d at 813.

**1.      Plaintiff Has Taken Affirmative Steps to Avail Itself of the Benefits of the Federal Copyright Framework.**

Plaintiff's contentions that it has not taken such voluntary action, Pl. Opp. at 17-22, are not convincing.  Initially, it is incorrect that Plaintiff has done nothing more than "follow[] the law."  *Id*. at 22.  Nothing in copyright law required Plaintiff to acquire the ownership of copyright in editorial enhancements to public-domain works by entering into agreements with third parties.  *See* Def. Mem. at 20-21.  And the mere fact that some of these third parties might have provided their editorial enhancements without entering into a "formal written agreement" with Plaintiff, Pl. Opp. at 5, is beside the point.[4]  To the extent that Plaintiff alleges that it "frequently does not own the copyright in the material it publishes because the material was written by other individuals," *id*., Plaintiff would not be the proper subject of the deposit request and would thus lack standing to challenge the requirement's application.  *See* 17 U.S.C. § 407(a) (deposit requirement applies to "the owner of copyright or of the exclusive right of publication in a work published in the United States").  However, despite the fact that the Copyright Office expressly informed Plaintiff that Section 407 "obligates the owner of copyright or of the exclusive right of publication/distribution in the work to make the required deposit" and stated

---

[4] A *formal* written agreement is not a prerequisite to establish a contractual understanding between parties.  *See, e.g.*, 1 *Corbin on Contracts* § 1.5, at 18 (rev. ed. 2018) (distinction between formal and informal contracts "is only rarely noted and is of not of great importance"); 1 Samuel Williston, *A Treatise on the Law of Contracts* § 3.2, at 259 (4th ed. 2007) (explaining that a "binding mutual understanding or so-called 'meeting of the minds' . . . sufficient to establish a contract requires no formality or express language regarding every detail of the proposed agreement") (footnote omitted).  Additionally, in circumstances where a copyright owner may have licensed Plaintiff to publish its work rather than transferred copyright ownership, *see* Joint Stipulations of Fact, ECF No. 17-3, ¶ 25 ("JSF"), such a license need not even be in writing.  *See Atkins v. Fischer*, 331 F.3d 988, 991 (D.C. Cir. 2003) (recognizing that under the Copyright Act, a "nonexclusive license may be granted orally or arise from the conduct of the parties" because the requirement of a written agreement does not apply to such licenses). However, as explained in the text, Plaintiff has failed to identify any work as to which it is not asserting copyright ownership.

that "[i]f you are not the owner of copyright or of the exclusive right of publication/distribution, please notify [the Office] immediately," JSF, Exs. B & F, at 1, Plaintiff has never indicated that it lacked ownership rights in any of the copyrightable material at issue here.

As discussed above, *see supra* I.A, Plaintiff has benefitted from the statutory copyright framework as a result of its decision to include notices of copyright in each of the books at issue in this case.  Copyright law neither required Plaintiff to include such notices in each of these books, nor to include express reservations of rights in a number of them, *see* JSF ¶ 29.  Instead, Plaintiff elected to do so.  This voluntary step is important because, as explained by Congress, providing copyright notice serves several purposes, including "inform[ing] the public as to whether a particular work is copyrighted," and identifying the copyright owner and showing the date of publication.  H.R. Rep. No. 94-1476, at 143; *see also Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (explaining that "[t]he function of copyright notice is to warn off copiers") (citing authority).  Also, a copyright owner that includes copyright notices in its works can defeat a defense in an infringement action based on allegedly innocent infringement in mitigation of damages.  17 U.S.C. § 401(d).

Plaintiff's attempts to minimize the importance of this voluntary step are not persuasive. It now contends that despite including of copyright notices in its works, it has no present "intention of suing anyone" for infringing its copyrights, but instead included these notices only because it "thinks making true statements about the law is important."  Pl. Opp. at 5.  But intentions can and do change, and nothing precludes Plaintiff from changing its mind about filing suit against a copyright infringer after registering its copyright.  Moreover, copyright law does not afford any relevance to the subjective motivation underlying a copyright owner's inclusion of notice in a work, but only to the inclusion itself.  The elements of valid notice do not include

subjective intentions.  *See* 17 U.S.C. § 401(b).  Plaintiff voluntarily chose to include copyright

notices in each of the works at issue in this case, and the result of that voluntary choice was that

the public was informed as to whether these works were copyrighted, potential infringers were

thereby deterred, and no innocent-infringement defense is available to any such infringers.

Plaintiff thus benefitted from this action; its purported subjective motivation for undertaking it is

irrelevant.[5]  Moreover, as discussed below, if Plaintiff now wishes to forfeit its copyright

protection, and thus cease to be subject to the deposit requirement, it can do so.  Plaintiff's

determination instead to proceed with this litigation in an effort to retain copyright protection

without being subject to the deposit requirement highlights that Plaintiff is not being forced into

the copyright scheme against its will.

Nor does Plaintiff succeed in its attempts to analogize this case to *Horne*.  Pl. Opp. at 22-

24.  *Horne*'s conclusion that "[t]he taking here cannot reasonably be characterized as part of a

. . . voluntary exchange" as in *Monsanto* depended on its determination that the raisin growers

could only opt out of participation in the Agricultural Marketing Agreement program by

declining to participate in the raisin market altogether.  *See* 135 S. Ct. at 2430 ("According to the

Government, if raisin growers don't like it, they can plant different crops, or sell their raisin-

---

[5] For similar reasons, Plaintiff's purported subjective motivation for including copyright notices does not "introduce[] new First Amendment" issues.  Pl. Opp. at 22.  Contrary to Plaintiff's characterization, the deposit provision is neither a "punishment" nor a "sanction," *id.*; rather, it is a condition on the grant of a valuable government benefit.  Plaintiff thus misplaces its reliance on *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), which involved a constitutional challenge to a state criminal law (*viz.*, one that criminalized publishing the name of the victim of a sexual offense). *See id.* at 526.  Additionally, because none of the works at issue in this case were considered to constitute copyrightable material because of formatting or layout decisions, the potential copyrightability of such decisions are not at issue in this case.  *See* Pl. Opp. at 4-5 & n.2; U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* (3d ed. 2017) ("*Compendium*"), § 313.3(E) ("The general layout or format of a book, a page, a slide presentation, a website, a webpage, a poster, a form, or the like, is not copyrightable because it is a template of expression."), https://www.copyright.gov/comp3.

variety grapes as table grapes or for use in juice or wine.") (citation and internal punctuation omitted).  Because the raisin growers' only available option to decline to participate in the program was to cease being a raisin grower, the Supreme Court concluded that participation was not voluntary.  By contrast, here, if Plaintiff were to choose not to avail itself of copyright protection by abandoning copyright protection in its works, it would not cease being a book publisher.  The copyright status of Plaintiff's books has no effect on its ability to publish those books, but only on its ability to exclude others from copying them.  Thus, unlike in *Horne*, Plaintiff is not faced with the dilemma of either participating in a program or declining to continue in the market of publishing and selling books.

###### 2. Plaintiff Has Declined to Opt Out of Participation in the Statutory Copyright Framework.

In addition to taking voluntary action to receive the benefits provided under the federal copyright framework, Plaintiff has declined to opt out of receiving such benefits.  Def. Mem. at 22.  In response, Plaintiff argues that there is no reason to believe that (1) the deposit provision would cease to apply if it abandoned statutory copyright protection, or (2) declining to opt out of the receipt of a statutory benefit is tantamount to the receipt of a benefit.  Pl. Opp. at 18-21.  Neither argument has merit.

First, abandonment of copyright is a recognized principle in both case law and leading copyright treatises.  *See Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998) (explaining that it is "well settled that rights gained under the Copyright Act may be abandoned" by means of "some overt act indicating an intention to abandon that right") (citation omitted); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.09 (2019) (analyzing cases discussing abandonment through overt acts manifesting "an intent by the copyright proprietor to surrender rights in his work").  And it is no more relevant that abandonment is not expressly

codified by statute than it is that other recognized doctrines such as waiver, estoppel, or laches are creations of equity rather than codification.  Moreover, Defendants have expressly stated that the Copyright Office would withdraw its demand for deposit if Plaintiff recorded a notice of abandonment with the Office (or informed the Office that it is otherwise not the owner of copyright or the exclusive right of publication and thus not subject to Section 407).  Def. Mem. at 22.  Plaintiff is thus mistaken that it is "impossible" for Plaintiff "to retroactively abandon its copyright in any of its books for purposes of mandatory deposit," or that it is presently unaware of any existing mechanism that would allow it to abandon its copyrights.  Pl. Opp. at 18.  It is also immaterial that the Office has explained that it will record a document by a publisher stating that it is abandoning copyright protection without offering its opinion as to the general legal effect of the document, *see id.* at 18-19.[6]  The Office will withdraw its demand for deposit if such a document is recorded.  That action is the only one that is legally relevant here.

Consequently, Plaintiff incorrectly contends that it would "be a tremendous administrative burden" to notify the Copyright Office that it is abandoning its copyright (or that it is otherwise not the owner of copyright or the exclusive right of publication) and to file a notice of abandonment for recordation.  *Id*. at 19 n.6.  Plaintiff can record a blanket notice of abandonment for multiple works in a single form, at which point the Office will no longer treat it as the "owner of copyright" for purposes of Section 407.  *See Compendium* § 2311 (contemplating one notice for multiple works).  The process of filing a notice of abandonment is

---

[6] This explanation is consistent with the Office's general practice with respect to all recorded documents.  *See* 37 C.F.R. § 201.4(g) ("Effect of recordation.  The fact that the Office has recorded a document [pertaining to a copyright] is not a determination by the Office of the document's validity or legal effect."); *see also* U.S. Copyright Office, Circular 12: Recordation of Transfers and Other Documents 7 (Sept. 2016) ("The Copyright Office does not attempt to judge the legal sufficiency or to interpret the content of any document submitted for recordation."), https://www.copyright.gov/circs/circ12.pdf.

not difficult.  Notices of abandonment can be very short as long as they sufficiently identify the rights in question being relinquished and who is relinquishing them.  *See id.* (notice of abandonment must "identify the claim" being abandoned, as well as the "full name of the party who signed the document" and what rights they are giving up).  Recording a notice of abandonment with the Office stating that the copyright owner "withdraws and abandons his Copyright Registration" has been held sufficient for a court to hold abandonment has taken place, and, in any event, would be considered sufficient by Defendants to eliminate obligation to comply with the deposit provision.  *See J2f Prods., Inc. v. Sarrow*, No. 09-cv-7000-JST, 2011 WL 13185746, at *4 (C.D. Cal. Jan. 12, 2011) (crediting notice of abandonment filed with Copyright Office).

Furthermore, as explained above, the deposit provision does not apply to Plaintiff to the extent that it is not the copyright owner (or possessor of the exclusive right of publication) of any particular work.  *See supra* I.B.  The remedy for Plaintiff in that event would be to identify for the Office which works it is not the copyright owner, and the Office will withdraw its demand for any such works.  To date, however, Plaintiff has not done so.

Moreover, Plaintiff incorrectly suggests that it will be required to "persuade every person" who provides supplemental materials added to books it publishers "to enter into formal agreements abandoning their copyright."  Pl. Opp. at 19 n.6.  Plaintiff is under no legal obligation to inform the copyright owner of such materials, or the copyright owner of a book that it obtains a license to publish, whether that owner is subject to the deposit requirement.  In the former scenario, if the third party contributed only separate copyrighted elements (such as an introduction or footnotes) to a public-domain work, then that third party is not the copyright owner of the public-domain work, but only of those separate copyrighted elements.  Though the

deposit provision would technically apply to the third party as the owner of these elements, the only published "best edition" eligible for deposit would likely be the book published by Plaintiff, given that the Copyright Office can only demand versions of a work as sold in the market, and Plaintiff does not represent that these elements are sold independently of the book that they accompany.[7]  Thus, the only obligation of the third party upon demand would be to provide a copy of the book published by Plaintiff.  In the latter scenario, the deposit provision applies to the copyright owner of the book.  In both cases, however, for purposes of alleviating the deposit obligation, the copyright owner could abandon his or her rights by filing a notice of abandonment of his or her copyright for recordation by the Copyright Office.

Second, Defendants have explained that Congress may place conditions on the grant of a valuable government benefit, and if an entity (such as Plaintiff) takes voluntary action to receive that benefit and declines to take affirmative steps to opt out of receiving it, then it must comply with the conditions in exchange for receiving the benefit.  Def. Mem. at 19-22, 24.  Thus, Plaintiff mischaracterizes Defendants' explanation regarding how Plaintiff has voluntarily availed itself of the benefits of statutory copyright protection, Pl. Opp. at 19-21, as Defendants

---

[7] This case does not appear to involve the issue of "joint works," which are works "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.  The supplemental material such as introductions in Plaintiff's books was written separately from (and after) the underlying book text, and no record evidence suggests that the authors of the books and of the supplementary material agreed for their contributions to merge into a unitary whole.  Plaintiff attests that to the best of its knowledge, contributors of supplementary materials such as introductions or footnotes "still own whatever copyright they ha[ve] in those materials."  Decl. of James Jenkins ¶ 7, ECF No. 18-3.  The fact that Plaintiff utilizes separate copyright notices for itself and the author of supplementary materials underscores this lack of intent to merge into a joint work.  *See, e.g.*, Carl Grosse, *Horrid Mysteries* (Valancourt Books ed. 2016) (containing separate copyright notices for Valancourt Books and for author of introduction) (attached as Ex. 1); *see also Compendium* § 505.2 (a work "containing separate copyright notices for the authors' respective contributions to the work" conflicts with requirements for joint authorship and makes such an arrangement "implausible").

did not assert that merely failing to actively divest oneself of the receipt of a benefit is tantamount to opting into its receipt.

## II.  The Deposit Requirement Is Consistent With the First Amendment.

### A.  The Deposit Requirement Does Not Place an Unconstitutional Restriction on Speech.

#### 1.  The Deposit Requirement Does Not Implicate Any First Amendment Concerns.

The First Congress, which included a deposit requirement in the first federal copyright law enacted in 1790, obviously saw no First Amendment problem with such a provision.  Nor did the Supreme Court, which upheld that provision as a constitutional condition of copyright protection.  *See Wheaton*, 33 U.S. at 663-64.  For largely the reasons outlined above—because Plaintiff has voluntarily sought the benefits bestowed under copyright protection, and because the deposit requirement is a reasonable condition placed on that statutory benefit to which Plaintiff has no constitutional entitlement—the requirement raises no First Amendment concerns. *See Ladd*, 762 F.2d at 815 (holding that because "[t]he first amendment does not protect the right to copyright," "a condition placed on copyright protection does not implicate first amendment rights"); *see also Authors League of Am., Inc. v. Ass'n of Am. Publishers*, 619 F. Supp. 798 (S.D.N.Y. 1985), *aff'd sub nom. Authors League of Am., Inc. v. Oman*, 790 F.2d 220 (2d Cir. 1986).

Plaintiff advances two First Amendment theories, both mistaken.  First, Plaintiff urges that the deposit requirement is not, in fact, a condition on copyright protection, but is instead a condition on publication.  That theory is incorrect for the reasons stated above; Plaintiff can publish books as it sees fit but abandon copyright protection and thus escape the deposit requirement.

Second, Plaintiff argues that the deposit requirement violates the unconstitutional conditions doctrine.  But that doctrine applies when the government conditions the availability of a benefit on the acceptance of a restriction on First Amendment rights.  Thus, if copyright protection were unavailable for people who criticized the government, or for people who refused to advocate particular positions, the doctrine would be implicated.  But here, the condition itself—deposit of a copy of a published work—does not impede First Amendment rights; rather, Plaintiff's contention is that any costly requirement would be unconstitutional because of the circumstances in which it is imposed.  Plaintiff's unconstitutional conditions argument thus adds nothing to the mistaken contention that the deposit requirement is premised on First Amendment activity (publication) rather than just being a cost associated with a government benefit (copyright protection).

Moreover, neither the deposit provision nor the Office's enforcement policy has any more than an incidental effect on speech.  Here, as in *Authors League*, the sole "impact" of the statutory condition on copyright protection "is not . . . on the right to freely distribute and receive literary works, but only on the right to freely distribute and receive works that enjoy full copyright protection."  790 F.2d at 222.  In *Authors League*, "since free importation [wa]s allowed to any author who agree[d] to forego United States' copyright protection, the clause place[d] no burden on the exercise of [First Amendment] rights."  *Id*.  Similarly, here, because the deposit provision does not apply to any publisher that agrees to forego copyright protection for its works, the provision does not burden the exercise of First Amendment rights.  Indeed, Plaintiff has failed to demonstrate that either the deposit provision or the Office's enforcement policy has actually chilled any protected speech.  Thus, the deposit provision does not constitute a speech restriction and does not infringe the First Amendment.

**2.     In the Alternative, the Deposit Requirement Satisfies Intermediate Scrutiny as Applied to Plaintiff.**

The deposit requirement does not implicate any First Amendment concerns.  In any event, even if the Court were to apply heightened constitutional means-end scrutiny here, the requirement would pass constitutional muster.  The statute contains no viewpoint- or content-based distinction, and thus, even if heightened scrutiny were appropriate, at most, intermediate scrutiny would apply.  Def. Mem. at 30 (citing authority).  The deposit provision satisfies intermediate scrutiny because it "advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests."  *BellSouth Corp. v. FCC*, 144 F.3d 58, 69-70 (D.C. Cir. 1998) (citation omitted).  The important governmental interest here is incentivizing "contributions of desirable books" to a national library, and "sustain[ing] a national library for the public use is necessary and proper," *Ladd*, 762 F.2d at 812, to the "promot[ion of] the Progress of Science and useful Arts."  U.S. Const. art. 1, § 8, cl. 8.  The deposit provision also does not burden any speech, much less substantially more speech than necessary to further the government's important interest.  The provision closes off no channels for the communication of information, and a publisher that believes it would be excessively burdensome to honor a demand to comply with the provision can request a grant of special relief from the Copyright Office.  Publishers often request such relief to allow them to submit an electronic copy of a work rather than a physical deposit, and in 2017 and 2018, the Copyright Office granted every special relief request it received.  JSF ¶¶ 59-60.[8]  Thus, even if intermediate scrutiny were applicable here—which it is not—the deposit provision would survive its application.

---

[8] Had the present case not proceeded to litigation, it is likely that the Copyright Office would have suggested to Plaintiff the possibility of entering into a special relief agreement in the event

In response, Plaintiff suggests that the deposit requirement is content-based because, even though the statute is itself content-neutral, the "true purpose of the requirement is not to obtain . . . books," but to "enforce contributions of desirable books to the Library of Congress."  Pl. Opp. at 27-28 (emphasis omitted).  Such an argument does not challenge the statute itself, but rather seeks to challenge the government's enforcement policy, and thus could not be a basis for striking down the statute on its face (as the Complaint requests).  As discussed above, the deposit requirement does not restrict anything that Plaintiff says in its publications, how those publications are designed, or how Plaintiff distributes those materials to the public.  But even assuming that the requirement could be viewed as a government restriction on speech, the requirement is decidedly content-neutral on its face.  *See* 17 U.S.C. § 407(a) (providing generally that "the owner of copyright or of the exclusive right of publication in a work published in the United States shall deposit" two copies of the best edition of the work).  Plaintiff effectively concedes as much in making its overbreadth argument.  *See infra* II.B.  Plaintiff notes that by operation of the deposit provision, the Library of Congress receives a number of books that it does not deem useful for the growth of a national library, and that it therefore transfers or disposes of these books.  Pl. Opp. at 31-32.  This only further demonstrates that the deposit provision does not constitute a content-based restriction on speech.

---

that Plaintiff had expressed concerns regarding potential burdens from the Office's narrowed demand letter.  Indeed, the Office and the Library have informed Plaintiff that they are willing to accept electronic copies of the books listed in this narrowed demand letter in lieu of physical copies.  JSF ¶ 61.  While it is correct this willingness was conveyed as a means of settling the present case, it was included in the Joint Stipulation of Facts as a statement of Defendants' present intent: they are willing to accept electronic versions of the books listed in the Library's demand letter in lieu of physical copies, regardless of whether Plaintiff were to dismiss its legal claims.  And Plaintiff did not object to the inclusion of this statement in the parties' Joint Stipulations.  Thus, Plaintiff errs in contending that Defendants' mention of this statement runs afoul of Fed. R. Evid. 408.  Pl. Opp. at 7 n.3.

The deposit provision is also "justified without reference to the content of the regulated speech," *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984), because the provision's purpose is to sustain a national library by incentivizing the contribution of published works.  *See* Elizabeth K. Dunne, *Study No. 20: Deposit of Copyrighted Works* (1960), *reprinted in* Staff of S. Comm. on the Judiciary, *86th Cong., Copyright Law Revision: Studies Prepared for the Subcomm. on Patents, Trademarks, and Copyrights of the Comm. on the Judiciary* 34 ("[D]eposits of copyrighted works serve two purposes: (1) To identify the work for the purpose of copyright registration, and (2) to provide copies of works for the Library of Congress.");[9] *see also Golan v. Holder*, 565 U.S. 302, 326 (2012) ("Evidence from the founding . . . suggests that inducing *dissemination*—as opposed to creation—was viewed as an appropriate means to promote science" under the Copyright Clause).  That purpose has nothing to do with content, and the deposit provision applies to copyrighted books regardless of their message or viewpoint.

Plaintiff's argument effectively concedes that the requirement is content-neutral on its face, but instead suggests that the Office's discretionary enforcement of the deposit provision in a manner designed to suit the needs of the national library, and balance the burden on publishers, turns a concededly content-neutral statute into an unconstitutional one.  Plaintiff's argument thus boils down to an assertion that the statute can be constitutional only if the government enforces it against everyone, does not enforce it against anyone, or enforces it "at random."  Pl. Opp. at 28.  That conclusion has no grounding in First Amendment doctrine or common sense.

As Plaintiff concedes, "[t]he vice of content-based legislation" is "that it lends itself to use" for "invidious, thought-control purposes."  Pl. Opp. at 30 (quoting *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2229 (2015)).  Creating a national library of notable public works does not

---

[9] https://www.copyright.gov/history/studies/study20.pdf

create that potential in the same way as restrictions on speech.  To the contrary, as the Supreme

Court has made clear: "To fulfill their traditional missions, public libraries must have broad

discretion to decide what material to provide to their patrons."  *United States v. Am. Library*

*Ass'n*, 539 U.S. 194, 204 (2003) (plurality opinion).  *American Library Association* concluded

that in utilizing this discretion, a public library may choose to include in its collection certain

categories of books (*e.g.*, those regarded as having literary merit) that it deems of particular value

and exclude other books (*e.g.*, pornography or books lacking literary merit) without running

afoul of the First Amendment.  *Id.* at 208.

In obtaining materials for the Library of Congress—the largest public library in the

world—the Copyright Office, following the Library's Collections Policy Statement, *see* JSF

¶ 52, is vested with broad discretion to make policy judgments regarding the enforcement of the

provision.  Utilizing that discretion, it is both reasonable and permissible for the Copyright

Office to exercise the same kind of judgment in focusing its enforcement discretion of the

provision on books that it deems to be of the highest importance.  Indeed, it would be irrational

to make such decisions without such considerations in light of space constraints.[10]

At its core, Plaintiff's argument is that the deposit requirement is objectionable because it

is allegedly not being enforced against *more* entities.  *See* Pl. Opp. at 29 (objecting that the

deposit provision is not currently being enforced to require deposits of "books that lack[] literary

merit or [are] pornographic").  But "the First Amendment imposes no freestanding

---

[10] Of course, the broad discretion afforded to the Library and the Office would not allow for invidious viewpoint discrimination.  *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 870 (1982) (although local school board "rightly possess[ed] significant discretion to determine the content of [its] school libraries," its discretion could "not be exercised in a narrowly partisan or political manner").  However, Plaintiff does not (and cannot) assert that any such discrimination is at issue here.

'underinclusiveness limitation.'"  *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1668 (2015)

(quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 (1992)).[11] And as noted, this concern is

directly contrary to Plaintiff's argument that the deposit requirement is unconstitutional because

it allegedly requires too many entities to deposit works with the Library.  *See infra* II.B.  The

purpose of the provision is to sustain a national library, and it is permissible to enforce the

provision based on the very justification underlying the statute itself.  *Cf. Williams-Yulee*, 135 S.

Ct. at 1668 (upholding solicitation ban "aim[ed] squarely at the conduct most likely to

undermine public confidence in the integrity of the judiciary: personal requests for money by

judges and judicial candidates").[12]  Just as, in the context of restrictions on speech, the

government has latitude to draw distinctions based on the factors that render speech proscribable,

---

[11] It is true that an underinclusive law can sometimes be deemed impermissible if it "raise[s] doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."  *Williams-Yulee*, 135 S. Ct. at 1668 (citation omitted).  And where strict scrutiny is appropriate, underinclusiveness can "reveal that a law does not actually advance a compelling interest."  *Id.* (citation omitted).  But here, Plaintiff does not contend—nor could it—that in enforcing the deposit provision, the Office is disfavoring particular speakers or viewpoints rather than "pursuing the interest it invokes;" moreover, strict scrutiny does not apply here.

[12] Analogously, in situations "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable, no significant danger of idea or viewpoint discrimination exists."  *R.A.V.*, 505 U.S. at 388.  "Such a reason," the Court stated, "having been adjudged neutral enough to support exclusion of the entire class of speech from First Amendment protection, is also neutral enough to form the basis of distinction within the class."  *Id.*; *accord Virginia v. Black*, 538 U.S. 343, 361-63 (2003).  Similarly, here, the very basis for the regulation of copyrighted published works by means of the deposit provision is to support a national library; thus, the Office may base its distinctions regarding enforcement of the provision within that broader class on that very reason by focusing enforcement on the missing books that it deems of particular importance to sustain a national library's collections.  *See also Act Now to Stop War v. Dist. of Columbia*, 846 F.3d 391, 407 (D.C. Cir. 2017) (upholding law requiring event-related signs, but not other signs, to be removed within a prescribed time because "the event-related distinction in the District's regulation turns on the very non-speech feature of that activity that makes it proscribable in the first place"), *cert denied*, 138 S. Ct. 334 (2017).

*R.A.V.*, 505 U.S. at 388, so too may the government draw distinctions in curating a library based on the considerations that make it important to have a library.

**B.       The Deposit Requirement Is Not Substantially Overbroad.**

Finally, Plaintiff mistakenly invokes First Amendment overbreadth doctrine.  Pl. Opp. at 30-36.  That doctrine allows a party, in the very limited context of First Amendment litigation, to argue that a statute should be struck down not because it is unconstitutional as applied to that party, but because it "is so broad that it may inhibit the constitutionally protected speech of third parties."  *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 11 (1988) (internal citations and punctuation omitted).

Plaintiff argues that the deposit provision is facially overbroad for three reasons: (1) it applies to all copyrightable works, though the Library of Congress transfers or disposes of a number of the books it receives via the deposit provision, (2) the provision applies to speakers who may purportedly wish to publish anonymously or to a narrow audience, and (3) it is possible that the Library could purchase or acquire books in an alternative manner if not for the provision's existence.  Pl. Opp. at 31-36.  None of these arguments states a meritorious First Amendment overbreadth claim.

Plaintiff's first and third overbreadth claims add little to its mistaken First Amendment claim as applied to its own circumstances.  The overbreadth doctrine only "prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process."  *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002).  But the deposit provision neither bans nor prohibits any speech; nor has Plaintiff shown that it has chilled any protected speech.  *See supra* II.A.2.  Plaintiff certainly cannot establish that any

overbreadth is "not only . . . real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

Plaintiff also challenges the deposit provision as applied to entities that may wish to publish anonymously or to a narrow audience. Pl. Opp. at 32-34. However, Plaintiff again fails to present any evidence that there is any "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of [such] parties." *Members of City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). Other than pure speculation, Plaintiff points to no indication of a chilling effect on any party that wishes to publish anonymously or to a narrow audience, and has not done so because of the provision. The Office has no requirement that a deposit must be associated with a real name and even permits registration solely under a pseudonym without providing an author's legal name. *See* U.S. Copyright Office, *Pseudonyms* ("If you write under a pseudonym and do not want to have your identity revealed in the Copyright Office's records, give your pseudonym and identify it as such on your application. You can leave blank the space for the name of the author."), https://www.copyright.gov/fls/fl101.pdf; *see also* U.S. Copyright Office, Standard Application Help: Author ("How should you identify the author of an anonymous work? If the work is anonymous, check the box marked 'Anonymous.' Additionally, you may provide the author's name in the application, but it is not required."), https://www.copyright.gov/eco/help-author.html.

Finally, Plaintiff argues that the Library possesses viable alternative methods for obtaining books for its collection other than the deposit provision. Pl. Opp. at 34-35. Of course, this argument is equally true as to Plaintiff's own publications, and, for the reasons given above,

does not mean that the provision is unconstitutional.  Repackaging the claim in an overbreadth framework adds no persuasive force.

## CONCLUSION

For the reasons stated above and in their opening brief, Defendants respectfully request that the Court enter summary judgment in their favor and deny Plaintiff's cross-motion for summary judgment.

Dated:  August 23, 2019     Respectfully submitted,

         JOSEPH H. HUNT
         Assistant Attorney General

         ERIC WOMACK
         Assistant Branch Director

         JESSIE K. LIU
         United States Attorney

         __ /s/  Daniel Riess ___
         DANIEL RIESS (Texas Bar No. 24037359)
         Trial Attorney
         United States Department of Justice
         Civil Division, Federal Programs Branch
         1100 L Street, N.W.
         Washington, D.C.  20005
         Tel: (202) 353-3098
         Fax: (202) 616-8460
         Daniel.Riess@usdoj.gov
         *Attorneys for Defendants*