## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **VALANCOURT BOOKS, LLC,** | ) | |
| | ) | **Civil Action No. 1:18-cv-01922-ABJ** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KARYN A. TEMPLE, in her official capacity** | ) | |
| **as Register of Copyrights, United States** | ) | |
| **Copyright Office** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### DEFENDANTS' REVISED RESPONSE TO PLAINTIFF'S
### SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 7(h), Defendants submit this response to Plaintiff's supplemental statement of undisputed material facts submitted with Plaintiff's cross-motion for summary judgment (ECF No. 18-2).

Preliminarily, Defendants note that this response is solely designed to respond to Plaintiff's supplemental statement, by identifying which of the factual grounds for Plaintiff's motion are not undisputed in Plaintiff's favor. In light of Defendants' separate motion for summary judgment, the use of the word "disputed" or similar references herein should not be construed to mean that Defendants believe that there are genuine issues of fact that would necessitate a trial. Rather, such language simply means that Defendants dispute Plaintiff's supplemental statement regarding that matter. Defendants maintain their position that there are *no* genuine issues of material fact with respect to the grounds entitling *Defendants* to summary judgment.

Additionally, having examined Plaintiff's supplemental statement, Defendants dispute Plaintiff's inclusion of numerous allegations and purported facts that are neither material to the

outcome of this action nor concise statements of fact but rather extensive characterizations of Plaintiff's subjective beliefs.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 ("As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.")

The format of this document is as follows.  The text of the facts originally alleged in Plaintiff's supplemental statement is set forth in italics at the beginning of each paragraph.  The balance of each numbered paragraph contains Defendants' response as to that particular alleged fact.  (Citations are omitted from the reproductions of Plaintiff's alleged facts.)

1.      *Valancourt Books' stated mission is simple: Finding and bringing forgotten, unloved, and underappreciated books to a broader audience.  It publishes long-forgotten Gothic novels, works of early LGBT authors, and other works that it deems important to bring to as wide an audience as possible.*

**Response:** The statements in this paragraph do not set forth facts that are material to the outcome of the pending motions.  Accordingly, no response is required.  To the extent a response is required, undisputed.

2.      *Valancourt Books' founders' original conception for the business was to use modern print-on-demand technology to make classic literature available to a wider audience at low cost. In a modern world with modern technology, there seemed to them no good reason why important books would be available only in a library's microfilm collection when Valancourt could make hard copies available using a straightforward print-on-demand model to avoid the costs of*

*stockpiling large print runs of these books*.

**Response:**  The statements in this paragraph do not set forth facts that are material to the outcome of the pending motions.  Accordingly, no response is required.  To the extent a response is required, undisputed.


3.    *Valancourt Books has never registered the copyright in any of its books or otherwise taken legal steps to secure copyright protection.  That said, James Jenkins testifies that his understanding of copyright law is that all or essentially all of Valancourt's books contain some material that is automatically copyrighted as a matter of U.S. law, U.K. law, or both.  This copyrightable material sometimes consists of scholarly introductions or footnotes that is included to explain to the reader what a particular cultural reference would have meant to the readers of the time.  In some instances, Jenkins understands that the arrangement of the contents and/or the typographical layout of the book itself would be copyrightable under U.S. or U.K. law*.

**Response:** The first sentence of this paragraph is disputed to the extent it asserts that Plaintiff has never "taken legal steps to secure copyright protection."  *See* 17 U.S.C. § 102(a) ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.").  Also disputed to the extent that this paragraph implies that Plaintiff has not taken voluntary action to receive the benefits afforded under federal copyright law, or that Plaintiff has declined to take action to opt out of receiving such benefits.  *See* Joint Stipulations of Fact, ECF No. 17-3, ¶¶ 28 ("JSF") (averring that "all (or nearly all) Valancourt books contain

a copyright notice"), 30 ("Valancourt has taken no steps to abandon or disclaim any of its

copyrights in the books it publishes.").  The second sentence of this paragraph is undisputed to

the extent that "Valancourt believes that all or nearly all books that it publishes, including each

of the 240 books at issue in this case, contain copyrightable material."  *Id*. ¶ 29.  The third

sentence of this paragraph is undisputed to the extent that "[m]any of the works that Valancourt

publishes are older works in the public domain, though the editorial enhancements that

Valancourt adds to the works—such as scholarly introductions and footnotes—are subject to

U.S. copyright protection" and that "Valancourt believes that all or nearly all books that it

publishes, including each of the 240 books at issue in this case, contain copyrightable material."

*Id*. ¶¶ 24, 29.  The final sentence of this paragraph does not set forth facts that are material to the

outcome of the pending motions.  Accordingly, no response is required.  To the extent a response

is required, disputed to the extent this sentence suggests that U.S. copyright protection extends to

the general layout or format of a book.  *See* U.S. Copyright Office, *Compendium of U.S.

Copyright Office Practices* § 313.3(E) (3d ed. 2017) ("The general layout or format of a book, a

page, a slide presentation, a website, a webpage, a poster, a form, or the like, is not copyrightable

because it is a template of expression. . . . Copyright protection may be available for the

selection, coordination, and/or arrangement of specific content, such as a compilation of artwork

or a compilation of text, provided that the content is arranged in a sufficiently creative manner."),

https://www.copyright.gov/comp3.


   4.    *Because most or all of Valancourt's books contain material that is automatically*

*copyrighted in the U.S. and/or the U.K. (which are the jurisdictions where Valancourt sells most*

*of its books), most or all Valancourt books contain true statements about their status under*

4

*copyright law.  James Jenkins testifies that these statements are not included because Valancourt*

*intends to sue to enforce these copyrights.  To the contrary, Valancourt cannot sue because its*

*copyrights are unregistered and, in any event, would not be able to sue as a practical matter due*

*to its small size.  Instead, Jenkins says Valancourt includes copyright statements for the simple*

*reason that they are true.*

**Response:** The first sentence of this paragraph is undisputed to the extent that

"Valancourt believes that all or nearly all books that it publishes, including each of the 240

books at issue in this case, contain copyrightable material and therefore all or nearly all of the

books Valancourt publishes contain a copyright notice—that is, a statement (which is accurate to

the best of Valancourt's knowledge) regarding the legal status of that material."  JSF ¶ 29.  The

remainder of this sentence is immaterial to the pending motions and therefore no response is

required.  The second sentence of this paragraph does not set forth facts that are material to the

outcome of the pending motions.  Accordingly, no response is required.  To the extent a response

is required, disputed because Defendants lack sufficient information to verify statements about

James Jenkins' subjective intentions that were not included in the parties' Joint Stipulation of

Facts.  The third sentence of this paragraph is disputed to the extent it implies that Plaintiff is

unable to register its copyrights or that any other factors prevent it from initiating infringement

actions.  *See* 17 U.S.C. § 411(a) (civil action for copyright infringement authorized, provided

that the copyright owner has registered its copyright).  Also disputed to the extent that this

sentence suggests that no enforcement remedies are available to owners of copyrights in

unregistered works.  *See id.* §§ 506(a)(1) (criminal penalties for willful copyright infringement),

512(c) (removal of allegedly infringing material by online service provider upon notification by

copyright owner), 1201 (causes of action for circumvention of technological measures protecting

copyrighted works and trafficking in circumvention devices), 1202 (cause of action for removal or alteration of copyright management information).  The fourth sentence of this paragraph does not set forth facts that are material to the outcome of the pending motions.  Accordingly, no response is required.  To the extent a response is required, disputed because Defendants lack sufficient information to verify statements about James Jenkins' subjective intentions that were not included in the parties' Joint Stipulation of Facts.  Defendants also dispute the statement that copyright statements are included "for the simple reason that they are true" to the extent it is inconsistent with the stipulation that "[s]ome of [Valancourt's] books . . . contain an express reservation of rights," JSF ¶ 29, and to the extent it suggests that the provision of copyright notice does not provide a legal benefit to Valancourt.  *See* 17 U.S.C. § 401(d) ("If a notice of copyright in the form and position specified by this section appears on the published copy or copies to which a defendant in a copyright infringement suit had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages.")

5.  *Valancourt's usual publishing arrangement for material not in the public domain is by way of a license to publish.  Valancourt does not own the copyrights to most of the material contained in its books aside from incidental material such as typographical layouts, cover designs or back cover blurbs.  Valancourt publishes some material that has been formally licensed by contract with authors or editors; however, in many cases it does not have any kind of formal agreement with scholars or writers who contribute introductions or footnotes.  As far as James Jenkins is aware, all of these scholars or writers still own whatever copyright they had in those materials at the moment they wrote them.*

**Response:** The first sentence is undisputed to the extent that "[o]ther works that

Valancourt publishes are more recent and therefore still subject to copyright protection even

though they are out of print.  For these titles, Jenkins frequently needs to spend considerable

amounts of time tracking down the rightsholder or the rightsholder's heir in order to secure

permission to republish the book."  JSF ¶ 25.  The remainder of this statement is disputed

because Defendants lack sufficient information to verify statements about Plaintiff's licensing

arrangements that were not included in the parties' Joint Stipulation of Facts and are not

specified as relevant to the works at issue in this case.  The second sentence is undisputed to the

extent that Plaintiff "believes that a portion of [the 240 books listed in the Copyright Office's

August 2018 demand] contain material in which copyright is held by parties other than

Valancourt."  *Id*. ¶ 30.  The remainder is disputed to the extent that this sentence implies that the

owners of copyright in supplementary materials published by Plaintiff (such as introductions or

footnotes) have not authorized or provided permission for Plaintiff to publish books containing

those supplemental materials.  *See id*. ¶ 25.  The third sentence is undisputed to the extent that

"[m]any of the works that Valancourt publishes are older works in the public domain, though the

editorial enhancements that Valancourt adds to the works—such as scholarly introductions and

footnotes—are subject to U.S. copyright protection" and that "[o]ther works that Valancourt

publishes are more recent and therefore still subject to copyright protection even though they are

out of print.  For these titles, Jenkins frequently needs to spend considerable amounts of time

tracking down the rightsholder or the rightsholder's heir in order to secure permission to

republish the book."  *Id*. ¶¶ 24-25.  The remainder of this sentence is disputed to the extent that

this sentence implies that the owners of copyright in supplementary materials published by

Plaintiff (such as introductions or footnotes) have not authorized or provided permission for

Plaintiff to publish books containing those supplemental materials.  *See id*. ¶ 25.  The fourth

sentence is undisputed to the extent that "[m]any of the works that Valancourt publishes are

older works in the public domain, though the editorial enhancements that Valancourt adds to the

works—such as scholarly introductions and footnotes—are subject to U.S. copyright protection."

*Id*. ¶ 24.  The remainder of this sentence is disputed to the extent that this sentence implies that

the owners of copyright in supplementary materials published by Plaintiff (such as introductions

or footnotes) have not authorized or provided permission for Plaintiff to publish books

containing those supplemental materials.  *See id.; see also* JSF, Exs. B & F, at 1 (informing

Plaintiff that 17 U.S.C. § 407 "obligates the owner of copyright or of the exclusive right of

publication/distribution in the work to make the required deposit" and stating that "[i]f you are

not the owner of copyright or of the exclusive right of publication/distribution, please notify [the

Office] immediately").

       6.     *James Jenkins testifies that he does not know of a practical way for Valancourt to*

*"abandon" the copyright in all of the books it publishes.  Valancourt does not own that*

*copyright, and as a practical matter he believes it would not be possible for them to track down*

*everyone who has ever written something for the company and persuade them to abandon their*

*copyright for all time.  As far as Jenkins is aware, there is no straightforward or legally binding*

*process by which they could so abandon their copyright.  Before he became a plaintiff in this*

*case, Jenkins had never heard of the idea of formally "abandoning" copyright, and he does not*

*believe, for the reasons stated above, that Valancourt could do so with respect to its past books*

*or its future books.*

     **Response:** The first sentence is disputed.  *See* Mem. Supp. Def. Mot. for Summ. J., ECF

No. 17-1, at 22 ("Def. Mem.") (explaining that the Copyright Office would withdraw a demand

for deposit from a publisher that notifies the Office that it was abandoning its copyright—or that it was otherwise not the owner of copyright or the exclusive right of publication—and by filing a document with the Office for recordation to that effect).  The second sentence is undisputed to the extent that "[m]any of the works that Valancourt publishes are older works in the public domain, though the editorial enhancements that Valancourt adds to the works—such as scholarly introductions and footnotes—are subject to U.S. copyright protection" and that "[o]ther works that Valancourt publishes are more recent and therefore still subject to copyright protection even though they are out of print.  For these titles, Jenkins frequently needs to spend considerable amounts of time tracking down the rightsholder or the rightsholder's heir in order to secure permission to republish the book."  JSF ¶¶ 24-25.  The remainder is disputed.  *See id*.  The third sentence is disputed.  *See* Def. Mem. at 22 (explaining that the Copyright Office would withdraw a demand for deposit from a publisher that notifies the Office that it was abandoning its copyright—or that it was otherwise not the owner of copyright or the exclusive right of publication—and by filing a document with the Office for recordation to that effect).   Plaintiff's statements in the fourth sentence about the subjective beliefs of James Jenkins are immaterial to the pending motion, and no response is required.  To the extent a response is required, the fourth sentence is disputed.  *See id*. at 22 (explaining that the Copyright Office would withdraw a demand for deposit from a publisher that notifies the Office that it was abandoning its copyright (or that it was otherwise not the owner of copyright or the exclusive right of publication) and would allow the Office to record a document to that effect).

7.     *James Jenkins was dismayed by the original demand email he received from the Copyright Office because the fines were daunting, and the time and expense of complying with*

*this demand would cost thousands of dollars and many hours spent ordering, repackaging, and*
*shipping his books—all to give the Library of Congress books that Jenkins thought it should*
*already have.*

**Response:** The statements in this paragraph do not set forth facts that are material to the
outcome of the pending motions. Accordingly, no response is required. To the extent a response
is required, disputed to the extent that this paragraph implies that Plaintiff could not have entered
into a special relief agreement with the Copyright Office under which Plaintiff could provide
electronic versions of the books at issue. *See* JSF ¶ 61 ("[I]n March of 2019, the Copyright
Office and the Library informed Valancourt that they are willing to accept electronic copies of
the books listed in the Office's August 9, 2019 demand letter to Valancourt . . . in lieu of
physical copies."). Also disputed because Defendants lack sufficient information to verify
statements about James Jenkins' state of mind that were not included in the parties' Joint
Stipulation of Facts.


8.  *James Jenkins testifies that he has compared the original list of 341 books the*
*Copyright Office demanded from Valancourt with the subsequent reduced list of 240 books*
*demanded from Valancourt. As far as he can tell, each of the omitted books contains new*
*copyrightable information just like all of Valancourt's other books, and he is unsure why the 101*
*books were omitted from the subsequent list.*

**Response:** The first sentence of this paragraph does not set forth facts that are material to
the outcome of the pending motions. Accordingly, no response is required. To the extent a
response is required, undisputed. The second sentence of this paragraph does not set forth facts
that are material to the outcome of the pending motions. Accordingly, no response is required.

To the extent a response is required, disputed.  *See* JSF, Ex. D (representation by Plaintiff that "many of the books specified in [the first] demand notice have previously been supplied by [Plaintiff] to the Library of Congress in connection with the Cataloging-in-Publication program").

Dated:  September 12, 2019                    Respectfully submitted,


                                              JOSEPH H. HUNT
                                              Assistant Attorney General

                                              ERIC WOMACK
                                              Assistant Branch Director

                                              JESSIE K. LIU
                                              United States Attorney


                                                /s/  Daniel Riess
                                              DANIEL RIESS (Texas Bar No. 24037359)
                                              Trial Attorney
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street, N.W.
                                              Washington, D.C.  20005
                                              Tel: (202) 353-3098
                                              Fax: (202) 616-8460
                                              Daniel.Riess@usdoj.gov
                                              *Attorneys for Defendants*