UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Valancourt Books, LLC<br><br>    *Plaintiff,*<br><br>               v.<br><br>Karyn Temple, et al.,<br><br>    *Defendants.* | Civil Case No. 1:18-cv-01922-ABJ |

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

Plaintiff Valancourt Books, LLC, respectfully provides this brief and the attached Supplemental Declaration of James Jenkins in response to this Court's Order of December 11, 2020 (Dkt 24). The Order asks the parties to address whether the Defendants' offer to accept electronic versions of the 240 books it has demanded Valancourt produce renders this action moot. For the reasons stated below, it does not.

**FACTS**

On June 11, 2018, James Jenkins (co-founder of Valancourt Books) received an email from an employee of the United States Copyright Office, demanding that Valancourt provide that office with free copies of some 341 Valancourt books on pain of hundreds of thousands of dollars in fines. Joint Stipulations of Fact (Dkt 17-3) (Joint Stipulations), ¶¶ 71–73 & Exs. A–C. Jenkins responded to this email by noting, among other things, that it would be "onerous and unreasonably burdensome" to force Valancourt to comply with this demand. *Id.* ¶ 76 & Ex. D. The Copyright Office responded to that email by reiterating its earlier demands, though it

1

reduced the number of books it demanded (for reasons that remain unclear) to 240. *Id.* ¶¶ 78–79 & Ex E; *compare also id.* ¶ 77 *with* Declaration of James Jenkins (Dkt. 18-3) ¶ 9.

In March of 2019 (roughly six months after this lawsuit was filed), the Defendants made a settlement offer under which they would enter into a "special relief" agreement with Valancourt that would allow it to deposit the 240 demanded books in electronic, rather than physical, form. *See* Joint Stipulations ¶ 61; Supplemental Declaration of James Jenkins (Supp. Dec.) ¶ 3 & Ex. A.

Valancourt rejected that offer, for two reasons. Supp. Dec. ¶ 4. For one, Valancourt objected to the idea that it would receive "special" treatment for no articulated reason while the government would retain a free hand to threaten other small publishers with crippling fines the way it had initially threatened Jenkins. *Id.* ¶¶ 4–5.

Equally importantly, though, Valancourt did not enter into a "special relief" agreement because it did not believe it could comply with it. *Id.* ¶ 6. Valancourt is a two-person operation whose cofounders prepare the business's books on their personal computers. *Id.* It does not maintain electronic copies of its old books beyond those that may exist on those old personal computers.[1] *Id.* And its founders do not still have all of their old computers, some of which were stolen in a home burglary in 2011. *Id.* ¶ 7. Finding digital copies of its old books would require Valancourt's cofounders to spend several hours searching old computers and looking through external storage media like CDs or external hard drives—and, as to some titles, that search would still likely be fruitless. *Id.*

---

[1] As explained in its summary-judgment briefing, Valancourt does not itself print any books; its cofounders prepare and lay out the books, but they are all printed by a third-party vendor. Joint Stipulations ¶ 75.

Moreover, the electronic files Valancourt does have may not be in a format that Defendants will accept. *Id.* ¶ 8. The Library of Congress requests files in PDF or Word format, but Valancourt's books will be in Adobe InDesign (including older, outdated versions of InDesign). *Id.* Converting those files that exist into acceptable formats would, again, take hours of work.

In short, even attempting to comply with the proposed "special relief" agreement would take many hours of work, and in some cases that work would almost certainly be fruitless, requiring Valancourt to still turn over hard copies of some of its books. *Id.* ¶ 9.

At summary judgment, the government (for the first time) asserted that this was no longer a settlement offer but was instead a statement of its "present intent." Defs.' Combined Mem. in Supp. of Mot. for Summ. J. and Opp. to Pl.'s Cross-Mot. (Dkt. 20), at 20 n.8. The government was, it said, willing to enter into a "special relief" agreement "regardless of whether Plaintiff were to dismiss its legal claim." *Id.*

At no point has the government explained why Valancourt qualifies for "special relief" now when it did not qualify after Jenkins sent his initial email pointing out how burdensome the government's demands were. While the Copyright Office has discretion to enter into "special relief" agreements that modify publishers' obligations under the mandatory-deposit statute challenged here, that office has no procedures or forms by which that relief is requested or by which it deems those requests sufficient, and it has never been able to articulate why Valancourt did not initially receive an offer of "special relief." Joint Stipulations ¶¶ 59, 61; *see also* Mem. of P & A in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pl's Cross-Mot. for Summ. J. (Dkt 19) ("MSJ Brief") at 9 & n.4.

Whatever the government's reasons, Valancourt has declined to enter into a "special

3

relief" agreement with the Copyright Office, for largely the same reasons it did not accept the initial settlement offer. Supp. Dec. ¶ 11. In short, the government's offer to enter into a "special relief" agreement with Valancourt is at best an offer to demand *less* personal property and to require Valancourt to shoulder a marginally smaller (but still substantial) burden in complying with its demands. *Id.* That offer has therefore not been accepted. *Id.*

## ARGUMENT

This case is not moot. It is not moot because an unaccepted settlement offer cannot moot a case. And even if it could, Defendants cannot meet the high burden required to show that voluntary cessation of wrongful activity has mooted a case.

### I. Defendants' willingness to enter into a "special relief" agreement cannot moot this case

An unaccepted settlement offer cannot moot a case. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016). This is true "however good the terms" because "[a]n unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity." *Id.* (quotation marks omitted). The same principle applies here. When Defendants initially offered to enter into a "special relief" agreement with Valancourt, Valancourt declined. *See supra* 2–4. It is immaterial that Defendants remain willing to enter into such an agreement because Valancourt is not. *Id.*

And Valancourt is unwilling to do so for good reason. Entering into a "special relief" agreement would still subject Valancourt to substantial burdens and would still require Valancourt to provide personal property to the government without compensation. *Id.* The government's offer of a "special relief" agreement eliminates none of the constitutional infirmities of the mandatory-deposit requirement challenged here, and it does not moot this case.

## II. Defendants cannot meet their burden of showing the case has been mooted by voluntary cessation.

Even if Valancourt had already entered into a "special relief" agreement, that would at best represent Defendants' voluntary cessation of their challenged conduct. For voluntary cessation to moot a case, a defendant must show both that (1) it is "'absolutely clear' that it could not revert to" the challenged policy, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), **and** (2) "interim relief or events have completely or irrevocably eradicated the effects of the alleged violation." *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020) (quotation marks omitted). Defendants here can make neither showing.

### A. The government has not even changed the policy challenged here, much less made it clear it could never be resumed.

"Mere voluntary cessation of allegedly illegal conduct does not moot a case" because if it did a defendant would be "free to return to [its] old ways." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). The test for mootness in this context is "stringent," and the "'heavy burden of persuading' the court [that a case is moot] lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Concentrated Phosphate*, 393 U.S. at 203).

That is a burden the government cannot carry here because, among other things, it has not tried. At least one appellate court has noted that, while courts generally have the duty to raise jurisdictional questions sua sponte, it is "hard to imagine that a defendant's *voluntary cessation* could *ever* operate itself to moot the underlying litigation" on the court's own motion. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 377 F.3d 949, 959 (9th Cir. 2004), *on reh'g en banc*, 426 F.3d 1162 (9th Cir. 2005), *rev'd and remanded*, 551 U.S. 701 (2007), *and*

5

*vacated*, 498 F.3d 1059 (9th Cir. 2007).[2] After all, without a motion by a party, "there is no one to satisfy the heavy burden of persuasion that well-established doctrinal precepts require *a party* to demonstrate before voluntary cessation can be held to moot a once-live case or controversy." *Parents Involved*, 377 F.3d at 959.

And there has been no motion from the government here because it could not hope to meet its burden. It has not rescinded its demand that Valancourt produce 240 books or its threat of ruinous fines should Valancourt fail to do so. It has not changed any of the policies or practices that led to that demand. It has instead offered to enroll Valancourt in a "special relief" program that would allow it to produce (some of) the demanded titles in a (somewhat) less costly fashion. The government has articulated no criteria by which Valancourt qualifies for this "relief" other than having filed this lawsuit. Neither has it articulated any criteria by which Valancourt might be disqualified from this "relief" in the future.

These sorts of voluntary actions unaccompanied by any formal policy change cannot moot a case. In *Zukerman*, for example, the plaintiff had challenged a 2018 Postal Service rule governing eligibility for its Custom Postage program—a program the Postal Service then announced it was discontinuing entirely. *Zukerman*, 961 F.3d at 440–41. But the D.C. Circuit held that case was not moot because "[m]ost important, the challenged 2018 Rule remain[ed] in effect" notwithstanding the Postal Service's announced plans. *Id.* at 446; *see also Glob. Tel*Link v. FCC*, 866 F.3d 397, 407 (D.C. Cir. 2017) (finding "absolutely no basis" for mootness so long as a challenged order was "still in force"). Because the government has neither changed a policy nor rescinded an order, this case cannot be moot.

---

[2] The procedural journey of *Parents Involved* is complicated, but the Supreme Court agreed on the jurisdictional point, finding that the voluntary-cessation burden was "clearly not met." *Parents Involved*, 551 U.S. 701, 719 (2001).

And even if Defendants' unilateral offer of "special relief" were the sort of policy change that could moot a case, it would still fail because it is discretionary. In *Trinity Lutheran*, for example, the Governor of Missouri had formally directed the state department of transportation to stop excluding religious entities from a challenged grant program. 137 S. Ct. at 2019 n.1. But that case was not moot because it was not "absolutely clear that [the state] *could not* revert to its policy of excluding religious organizations." *Id.* (emphasis added). So too here. Defendants' "special relief" program is entirely discretionary and rarely invoked. *See* Joint Stipulations ¶ 59. Because no legal barrier prevents the government from again demanding (all) physical books of Valancourt, just as it does of most publishers, this case cannot be moot.

### B.     Valancourt is still injured.

Even if the government could establish that it has adopted a new permanent policy that would grant Valancourt "special relief," this case would only be moot if offering that relief has "irrevocably eradicated" Valancourt's injury. *Zukerman*, 961 F.3d at 442. It has not.

Valancourt's injury is that the government has threatened it with fines if it does not provide copies of 240 books. The government's offer of "special relief" does not eliminate that threat. Because Valancourt is still facing an injury, it is entitled to relief under both the Takings Clause and the First Amendment.

Under the Takings Clause, Valancourt complains that it is being forced to turn over its property without just compensation. *See* MSJ Brief at 11–17. It still is. Because Valancourt does not have digital copies of all of the requested books, the government's offer of a "special relief" agreement would allow Valancourt to deposit some, but not all, of the requested books digitally.

7

Supp. Dec. ¶¶ 6–9, 10.[3] Because the government continues to demand that Valancourt turn over personal property without compensation, Valancourt's Takings Clause arguments are unchanged.

Under the First Amendment, Valancourt complains that the government is imposing burdens on it—threatening fines, demanding that it spend time collecting and delivering materials, and so forth—based solely on the content of Valancourt's speech. MSJ Brief at 24–36. Again, it still is. Complying with the government's demands for digital files *might* require Valancourt's two employees to spend less time than they would have spent shipping physical books, but compliance would still require many hours of work. Supp. Dec. ¶ 11. Those burdens are still being imposed based on the government's evaluation of the content of Valancourt's books. MSJ Brief at 27–30. And they are still being imposed pursuant to an underlying requirement that is vastly overbroad. MSJ Brief at 30–36. Valancourt's free-speech arguments remain unchanged.

Simply put, because producing digital copies is burdensome, and because the only authority the government has for imposing that burden is the threat of enforcing the statute at issue in this case, the constitutionality of the statute remains at issue in this case. That is true regardless of whether the government decides not to enforce the statute to its fullest effect.

Valancourt's injuries represent a "tangible, concrete effect, traceable to the injury and curable by the relief demanded[.]" *Zukerman*, 961 F.3d at 444. This case is therefore not moot.

---

[3] Because the government continues to demand tangible property, the Court need not address whether Valancourt's digital files are also "property" under the Takings Clause, a question that state law would control. *Cf. Carpenter v. United States*, 138 S. Ct. 2206, 2270 (2018) (Gorsuch, J., dissenting) (collecting cases).

**CONCLUSION**

For the reasons stated above, this case remains a live controversy. The pending cross-motions for summary judgment should therefore be decided, and judgment should be entered in Plaintiff's favor.

Dated December 22, 2020

Respectfully submitted,

>/s/ Robert J. McNamara
>Robert J. McNamara (DDC Bar # VA065)
>Jeffrey Redfern (DC Bar #1018046)
>INSTITUTE FOR JUSTICE
>901 North Glebe Road, Suite 900
>Arlington, Virginia 22203
>Tel: (703) 682-9320
>Fax: (703) 682-9321
>Email: rmcnamara@ij.org
>*Attorneys for Valancourt Books, LLC*