UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Valancourt Books, LLC<br><br>*Plaintiff,*<br><br>v.<br><br>Karyn Temple, et al.,<br><br>*Defendants.* | Civil Case No. 1:18-cv-01922-ABJ |

**SUPPLEMENTAL DECLARATION OF JAMES JENKINS**

1. I make this declaration based on my personal knowledge of the facts stated. If called upon, I could testify competently to all facts stated below.

2. As I have previously testified, I founded Valancourt Books in 2005 alongside my husband. The two of us continue to run the business to this day; we have no other employees.

3. On March 11, 2019, the defendants in this case communicated a settlement offer to me through my attorney. It read, in relevant part:

> As you may know, in instances where depositing Best Edition print copies of demanded titles would constitute an unsustainable economic burden, the Register of Copyrights has the option of entering into Special Relief agreements with copyright owners.
>
> Here, my clients wish to offer, in full settlement for all of Valancourt's claims, permission for Valancourt to deposit the 240 requested titles in electronic format. This grant of Special Relief would extend to any request by the Copyright Office for future

1

>publications by Valancourt. If acceptable to you, the parties would memorialize this in written form, with the appropriate releases. Each party would bear their own costs and fees.

A true and correct copy of this settlement offer (with attorney-client communications redacted) is attached as Exhibit A.

4. I promptly rejected this settlement offer for two independent reasons. First, I was concerned that the government's offer would give Valancourt special treatment while leaving the government free to threaten other small publishers with huge fines. When I received the initial demand for copies of Valancourt's books, accompanied by a threat of a six-figure fine, I had promptly informed the government that its demand was "onerous and unreasonably burdensome" given my business's circumstances (this email was attached as Exhibit D to the parties' Joint Stipulations of Fact, Dkt. # 17-3, at 27). That email had not resulted in any offer of "special relief," which made me worry that I was only being offered "special relief" because I had found pro bono lawyers to represent me.

5. It did not seem right to enter into a "special" agreement with the government in order to secure Valancourt's right to publish books without being fined or forced to turn over its property. That right is not "special." It belongs to all Americans, not just ones who get special treatment or have pro bono lawyers.

6. Equally importantly, though, I rejected the settlement offer because Valancourt likely cannot comply with it. Again, Valancourt is a small, two-person operation. It does not have a separate IT department; our books have always been prepared on our personal computers. The list of demanded titles goes back to 2006,

2

a fourteen-year period during which I have upgraded to new computers at least five times. Because of the long lapse of time and for the reasons specified below, I do not believe I have electronic copies of all of the demanded books.

7. First, my husband and I were the victims of a home burglary on October 31, 2011, in which all of our computers were stolen. Although files relating to some books published between 2005 and 2011 may have been backed up on CDs or external hard drives, many were not, and furthermore, after nearly ten years and having moved house several times since then, I am not even sure where such backup copies would be or whether they even still exist. Searching for these files would take several hours and most likely be fruitless.

8. Second, to the extent I do have electronic files for our older titles, those electronic files in some cases will not be in Word or PDF files of the sort that the Library of Congress accepts. (The Library of Congress has published a list of accepted file formats for people uploading copies of their works for purposes of registering their copyrights, which is available online here: https://www.copyright.gov/eco/help-file-types.html.) Some of my electronic files will be in acceptable formats, but others will be in formats the Library does not accept, such as Adobe InDesign (.indd) files created on now-obsolete versions of InDesign (CS2, CS3 and CS4). Converting those files to an acceptable format may also take hours of work.

9. Third, I am reasonably certain that even if I conduct a scrupulous search of my old devices, I simply do not have all 240 titles in electronic format.

Twenty-four of the demanded books were published in 2011 or earlier, and, as noted above, computers containing those files were stolen and backup files for many or all of these titles likely do not exist. At least some of the 240 titles, then, would still need to be turned over in hard copy even after I spent hours finding, converting, and uploading electronic copies of Valancourt's books.

10. I am aware that in its summary-judgment briefing, the government announced that it had converted its settlement offer into what it called a "statement of present intent" and that it was willing to accept electronic copies of the 240 titles regardless of Valancourt's willingness to settle this lawsuit. *See* Defs.' Combined Mem. in Supp. of Mot. for Summ. J. and Opp. to Pl.'s Cross-Mot., Dkt. 20, at 20 n.8.

11. I appreciate that this lawsuit has caused the government to change its position. The new position is an improvement: It would require me to spend less time and turn over less personal property to comply with the government's demands. But its new position does not resolve the conflict between us. The government's latest proposal would still require me to spend a lot of time and turn over personal property to comply with its demands, on pain of high fines.

12. The substance of this declaration is my own, and the statements in it are based on my own personal knowledge except where otherwise indicated. I have had the assistance of counsel in preparing this declaration.

13. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of December 2020

_____
James Jenkins

EXHIBIT A

# Robert McNamara

| | |
|---|---|
| **From:** | Robert McNamara |
| **Sent:** | Monday, March 11, 2019 5:18 PM |
| **To:** | jjenkins@valancourtbooks.com |
| **Subject:** | FW: Valancourt Books v Temple (DDC) -- settlement communication |

[redacted]

**From:** Riess, Daniel (CIV) [mailto:Daniel.Riess@usdoj.gov]
**Sent:** Monday, March 11, 2019 5:13 PM
**To:** Robert McNamara
**Cc:** Emily Gammon; Jeffrey Redfern
**Subject:** Valancourt Books v Temple (DDC) -- settlement communication

CONFIDENTIAL SETTLEMENT COMMUNICATION
Subject to Fed. R. Evid. 408

Bob:

During last month's status conference, the Court encouraged the parties to consider whether the claims in this case could be resolved via settlement. As you may know, in instances where depositing Best Edition print copies of demanded titles would constitute an unsustainable economic burden, the Register of Copyrights has the option of entering into Special Relief agreements with copyright owners.

Here, my clients wish to offer, in full settlement for all of Valancourt's claims, permission for Valancourt to deposit the 240 requested titles in electronic format. This grant of Special Relief would extend to any request by the Copyright Office for future publications by Valancourt. If acceptable to you, the parties would memorialize this in written form, with the appropriate releases. Each party would bear their own costs and fees.

Sincerely,
Daniel

Daniel Riess
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W.
Washington, D.C. 20005
(202) 353-3098  phone
(202) 616-8460  fax