IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALANCOURT BOOKS, LLC, | ) |
| | ) Civil Action No. 1:18-cv-01922-ABJ |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SHIRA PERLMUTTER,[1] in her official capacity as Register of Copyrights, United States Copyright Office *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS' SUPPLEMENTAL BRIEF ADDRESSING MOOTNESS**

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Shira Perlmutter is automatically substituted for her predecessor, Karyn A. Temple, Register of Copyrights.

## INTRODUCTION

When the plaintiff in this action (a book publisher) filed this action challenging the constitutionality of Section 407 of the Copyright Act, it premised injury in fact on the alleged cost of providing physical copies of certain of its published works to the Library of Congress in compliance with that statutory provision. The Library has notified Plaintiff that the requested copies may be submitted in electronic form, and as clarified below, this notification applies as well to any works published by Plaintiff in the future. Provided that Plaintiff is willing to submit its books in this form, this case would be rendered moot, either as a constitutional or prudential matter. In the event that Plaintiff were to decide that it does not wish to provide its books in electronic form, then Defendants would not assert that this case is moot. However, the minimal nature of the burden on Plaintiff, in exchange for the significant statutorily-conferred benefits it receives, shows the reasonableness of the balance that Congress has struck in establishing a comprehensive framework governing copyright protection.

## RELEVANT BACKGROUND

The background to this case is set forth in Defendants' earlier memorandum in support of their motion for summary judgment. *See* Mem. in Supp. of Defs.' Mot. for Summ. J. at 2-12, ECF No. 17-1. As relevant to this supplemental motion, the United States Copyright Office determined that 240 books published by Plaintiff warranted inclusion in the permanent collections of the Library of Congress due in part to their historical significance. Pursuant to 17 U.S.C. § 407, the Library issued Plaintiff a demand letter in August 2018 for the deposit of physical copies of the 240 books. Plaintiff filed a complaint for declaratory and injunctive relief, ECF No. 1, challenging Section 407 as inconsistent with the First and Fifth Amendments. In lieu of engaging in discovery,

the parties agreed to enter into a joint stipulation of material facts. Joint Stipulations of Fact, ECF No. 17-3 ("JSF").

In March of 2019, the Copyright Office notified Plaintiff that the Library is willing to accept electronic copies of the 240 books in lieu of physical copies. *Id.* ¶ 61. Following the completion of summary judgment briefing, the Court issued an order on December 11, 2020 stating that it "must assure itself that this matter presents a live controversy to be resolved." Order (Dec. 11, 2020) at 3, ECF No. 24 ("Dec. 11 Order"). The Court accordingly ordered that the parties "must each file a supplemental submission . . . , addressing whether the defendants' offer renders the dispute moot." *Id.* The Court further directed Defendants to "clarify whether their stated willingness to accept electronic copies in lieu of physical copies applies only to the 240 works requested in the August 2018 updated demand letter or whether it covers works to be published in the future as well." *Id.*

## DISCUSSION

### I. The Library Is Willing to Accept Electronic Copies of Future Works Published by Plaintiff in Lieu of Physical Copies.

In accordance with the Court's December 11 Order, Defendants respectfully clarify that their willingness to accept electronic copies of Plaintiff's books in lieu of physical copies extends not only to the 240 books that were the subject of the August 2018 updated demand letter, but also to any and all future works published by Plaintiff.

### II. If Plaintiff Were to Agree to Submit Its Published Works in Electronic Form, Then This Case Will Have Been Rendered Moot.

A federal court is presumed to lack subject matter jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A plaintiff's claims of jurisdiction should be closely scrutinized because a court has "an affirmative obligation

to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Where a case challenges official government action, the discontinuation or cessation of such action frequently moots the case. *See, e.g.*, *Trump v. Int'l Refugee Assistance*, 138 S. Ct. 353 (2017) (instructing Court of Appeals to dismiss as moot a challenge to an executive order that had expired by its own terms); *Clarke v. United States*, 915 F.2d 699, 700-03 (D.C. Cir. 1990) (en banc) (case challenging constitutionality of statute mooted by statute's expiration); *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 490-92 (7th Cir. 2004) (case challenging statute as unconstitutional mooted where state agency informed plaintiff, and made public declaration, that it would not enforce statute against plaintiff).

"Mootness is often described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Chavis v. Garrett*, 419 F. Supp. 3d 24, 32 (D.D.C. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189-90 (2000)). Therefore, "[i]n any mootness inquiry, [the Court] 'must first defin[e] the wrong that the defendant is alleged to have inflicted,'" *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020) (quoting *Clarke*, 915 F.2d at 703), because "'[t]he wrong at issue for mootness purposes is . . . defined by the plaintiffs' theory set forth in the complaint,' which should be read with a 'focus on

identifying the factors that were essential to plaintiffs' original theory of their claim.'" *Larsen v. U.S. Navy*, 887 F. Supp. 2d 247, 252 (D.D.C. 2012) (quoting *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 323 (D.C. Cir. 2009) (internal punctuation omitted)).

"Along with its constitutional aspects, *i.e.*, when the absence of a "case or controversy" deprives an article III court of jurisdiction, there exists what [the D.C. Circuit has] called 'a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration.'" *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147 (D.C. Cir. 1986) (quoting *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)). "Unlike Article III mootness, these doctrines address not the power to grant relief but the court's discretion in the exercise of that power." *Chamber of Commerce*, 627 F.2d at 292. Courts may "refuse to entertain a suit which, while 'not actually moot, is so attenuated that considerations of prudence and comity . . . counsel the court to stay its hand, and to withhold relief it has power to grant.'" *Community for Creative Non-Violence v. Hess*, 745 F.2d 697, 700 (D.C. Cir. 1984) (quoting *Chamber of Commerce*, 627 F.2d at 291); *see also Committee in Solidarity With People of El Salvador v. Sessions*, 929 F.2d 742, 745-46 (D.C. Cir. 1991) ("Equitable considerations and justiciability often tend to merge as the district court decides 'whether the controversy is sufficiently live and concrete to be adjudicated and whether it is an appropriate case for equitable relief.'") (quoting *Am. Foreign Serv. Ass'n v. Garfinkel*, 490 U.S. 153, 161 (1989) (per curiam)).

In its complaint, Plaintiff alleged harm based on the Library's demand, in an August 2018 letter, that Plaintiff deposit physical copies of 240 works that Plaintiff had published. *See* Compl. ¶ 56. Plaintiff additionally contended that providing physical copies of these works "would require a substantial amount of work over multiple days, ordering, packaging, and shipping hundreds of books," "would cost Valancourt substantially more than one thousand dollars," and "would

necessarily divert resources from [its] mission—preserving and disseminating lost and forgotten literature." *Id*. ¶¶ 59-61.  Furthermore, Plaintiff alleged that if it did not provide physical copies of the 240 books, it could be subjected to fines, *id*. ¶ 62, and that potential future demands by the Library for physical copies of books in its back catalog "would result in at least hundreds of dollars in additional annual costs to Valancourt in addition to many hours of time diverted from its two-person staff's already limited resources." *Id*. ¶¶ 63-64; *see also* JSF ¶ 75 (stating that "[a]s a small, print-on-demand publisher, Valancourt does not typically maintain physical copies of its books," and that "Valancourt only has hard copies of books available on rare occasions for specific purposes such as books printed for the purpose of exhibition at a conference or convention").

Defendants have now clarified that Plaintiff is under no obligation, either now or in the future, to provide physical copies of books to the Library of Congress pursuant to 17 U.S.C. § 407 if it instead provides electronic copies of the published works.  And the parties have stipulated that Plaintiff already "has copies in electronic format of all or nearly all of the 240 books at issue in this case." JSF ¶ 22.  Nothing in the factual record suggests that providing copies in electronic format of works that it already possesses represents any significant burden to Plaintiff.  Thus, if Plaintiff is willing to provide these electronic copies, then this case will have been rendered moot, either as a constitutional or prudential matter.[1]

---

[1] The prudential basis for a finding of mootness would be that "there is no real measure of redress available to [Plaintiff] even if it prevails on its claims." *MBIA Ins. Corp. v. FDIC*, 816 F. Supp. 2d 81, 101 (D.D.C. 2011), *aff'd*, 708 F.3d 234 (D.C. Cir. 2013) (quoting *Foretich v. United States*, 351 F.3d 1198, 1216 (D.C. Cir. 2003)).  Nor would any known exception to mootness apply.  The voluntary cessation exception does not apply when "the defendant shows that: (1) 'there is no reasonable expectation . . .' that the alleged violation will recur,' and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Larsen*, 525 F.3d at 4 (quoting *Davis*, 440 U.S. at 631).  There is no basis to expect that Plaintiff will be obliged to provide physical copies of any of its works to Defendants at any time, and Plaintiff neither created any physical copy of the original 240 works in preparation for production to the Library nor paid any associated fines.  *See* JSF ¶ 81.  Nor would this case be capable of repetition yet evading

If Plaintiff is not willing to do so, then Defendants would not contend that the case is moot, as Plaintiff is required by law to submit the works in electronic format subject to a potential action for fines and costs. *See* 17 U.S.C. § 407(d). Although the case may remain live, however, the minimal nature of the burden on Plaintiff underlines the weakness of its legal claims, as Defendants have previously explained.

Plaintiff has repeatedly emphasized the alleged burden of providing physical copies of books, in terms of both monetary cost and expenditure of time. *See, e.g.*, Compl. ¶¶ 59-60 (alleging that "[c]omplying with the Copyright Office's demands would cost Valancourt substantially more than one thousand dollars," and "would require a substantial amount of work over multiple days, ordering, packaging, and shipping hundreds of books"). In support of Plaintiff's cross-motion for summary judgment, declarant James Jenkins contended that providing physical copies would be "enormously burdensome" because of the cost of printing and shipping hardback books:

> I conservatively estimate that it would cost the business thousands of dollars and cost me personally many hours over the course of several working days, including time spent ordering each individual book via our printing service's website; *going to a print shop* to print the 341 (or 240)-page PDF document containing individual barcoded pages emailed to me by the Copyright Office; *receiving, unpacking, organizing, and repackaging the books* after pairing each book with its respective barcoded page; and making multiple trips in my car to drive them to a UPS Store for shipment to the Copyright Office. *Printing a Valancourt hardcover* costs the company about $15; *shipping* that book with a trackable service like UPS as demanded by the Copyright Office would be another $12 to $15.

Decl. of James Jenkins ¶ 10, ECF No. 18-13 (emphasis added). However, Defendants have now alleviated Plaintiff's obligation to submit physical copies of *any* of its books, now or in the future.

---

review. There is no "reasonable expectation that the same complaining party would be subjected to the same action again," *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam), and the challenged conduct is not "in its duration too short to be fully litigated" to the Supreme Court "prior to its cessation or expiration." *Newdow v. Roberts*, 603 F.3d 1002, 1008 (D.C. Cir. 2010).

This relief offered to Plaintiff is not unusual. Copyright owners such as Plaintiff that believe it would be excessively burdensome to comply with a written demand can request a grant of "special relief" from the Copyright Office for published works that are not otherwise exempt. 37 C.F.R. § 202.19(e). Publishers often request special relief to allow them to submit an electronic copy of a work rather than a physical deposit. JSF ¶ 60. The Copyright Office has multiple ongoing special relief agreements that permit this arrangement; in 2017 and 2018, the Copyright Office granted every such special relief request it received. *Id*. ¶¶ 59-60.

Defendants' willingness, in this case and others, to work to alleviate any burden that may exist in the process demonstrates how the Constitution cannot be read to prohibit the voluntary exchange of which Plaintiff's works are a part. As explained previously, Congress may condition the provision of a voluntarily-sought government benefit on the furnishing of certain private property if that condition rationally relates to a legitimate government interest. *Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1004-08 (1984).

The minimal obligation of Plaintiff to provide electronic copies of certain of the published works for which it receives copyright protection demonstrates the rationality of the voluntary exchange in this case, in which the government provides an economic benefit to book publishers such as Plaintiff to make their works available for the benefit of the public. That Plaintiff may submit electronic copies of its works in lieu of physical copies as its "contribution to the Library of Congress," *Ladd v. Law & Tech. Press*, 762 F.2d 809, 814 (9th Cir. 1985), underscores the rationality of the exchange of this minimal contribution for the statutory copyright protection it has claimed over its published works.

And with respect to its First Amendment claim, Plaintiff has expressly tied its legal theory to the burden that is purportedly imposed. *See* Compl. ¶ 73 (contending that the deposit requirement imposes a "unique and special burden"), *id*. ¶ 75 (alleging that the requirement imposes "particularly heavy burdens on print-on-demand publishers, who . . . do not keep excess stock" of physical books). As Defendants have explained, the deposit requirement does not burden speech *at all*, much less impose a burden that is more than "incidental." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *see Leathers v. Medlock*, 499 U.S. 439, 449-50, 453 (1991) (rejecting First Amendment challenge to state sales tax that excluded or exempted certain segments of the media but not others). That conclusion is only strengthened by Defendants' willingness to accept electronic copies of the works at issue from Plaintiff.

Dated: December 22, 2020                                Respectfully submitted,

                                                        JEFFREY BOSSERT CLARK
                                                        Acting Assistant Attorney General

                                                        ERIC WOMACK
                                                        Assistant Branch Director


                                                           /s/  Daniel Riess
                                                        DANIEL RIESS (Texas Bar No. 24037359)
                                                        Trial Attorney
                                                        United States Department of Justice
                                                        Civil Division, Federal Programs Branch
                                                        1100 L Street, N.W.
                                                        Washington, D.C.  20005
                                                        Tel: (202) 353-3098
                                                        Daniel.Riess@usdoj.gov
                                                        *Attorneys for Defendants*