# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:18−cv−01922−ABJ

| | |
|---|---|
| VALANCOURT BOOKS, LLC v. PERLMUTTER, et al | Date Filed: 08/16/2018 |
| Assigned to: Judge Amy Berman Jackson | Date Terminated: 07/23/2021 |
| Cause: 28:2201 Declaratory Judgment | Jury Demand: None |
| | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**VALANCOURT BOOKS, LLC**  represented by  **Jeffrey H Redfern**
901 N Glebe Rd
Ste 900
22203−1854
Arlington, VA 22203
(703) 682−9320
Fax: (703) 682−9321
Email: jredfern@ij.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Renee Flaherty**
INSTITUTE FOR JUSTICE
901 North Glebe Road
Suite 900
Arlington, VA 22203
(703) 682−9320
Fax: (703) 682−9321
Email: rflaherty@ij.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert J. McNamara**
INSTITUTE FOR JUSTICE
901 North Glebe Road
Suite 900
Arlington, VA 22203
(703) 682−9320
Fax: (703) 682−9321
Email: rmcnamara@ij.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MERRICK B. GARLAND**  represented by  **Daniel Riess**

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 353–3098
Fax: (202) 616–8460
Email: daniel.riess@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SHIRA PERLMUTTER**
*in her official capacity as the Register of*
*Copyrights of the U.S. Copyright Office*

represented by **Daniel Riess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KARYN A. TEMPLE**
*in her official capacity as the Acting*
*Register of Copyrights of the U.S.*
*Copyright Office*
*TERMINATED: 12/22/2020*

represented by **Daniel Riess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KARYN TEMPLE CLAGGETT**
*in her official capacity as the Acting*
*Register of Copyrights of the U.S.*
*Copyright Office*
*TERMINATED: 11/21/2018*

represented by **Daniel Riess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM P. BARR**
*in his official capacity as Attorney*
*General of the United States*
*TERMINATED: 07/21/2021*

represented by **Daniel Riess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JEFFERSON B. SESSIONS, III**
*in his official capacity as Attorney*
*General of the United States*
*TERMINATED: 11/21/2018*

represented by **Daniel Riess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MATTHEW G. WHITAKER**
*in his official capacity as Acting Attorney*
*General of the United States*
*TERMINATED: 04/30/2019*

represented by **Daniel Riess**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/16/2018 | 1 | | COMPLAINT against All Plaintiffs ( Filing fee $ 400 receipt number 0090–5642377) filed by Valancourt Books, LLC. (Attachments: # 1 Civil Cover Sheet, # 2 Summons to Copyright Office, # 3 Summons to US Attorney General, # 4 Exhibit A, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E)(Flaherty, Renee) (Entered: 08/16/2018) |
| 08/16/2018 | 2 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert J. McNamara, :Firm– Institute for Justice, :Address– 901 N. Glebe Road, Suite 900, Arlington, VA 22203. Phone No. – (703) 682–9320. Fax No. – (703) 682–9321 Filing fee $ 100, receipt number 0090–5642459. Fee Status: Fee Paid. by Valancourt Books, LLC (Attachments: # 1 Declaration of Robert J. McNamara in Support of Motion for Admission Pro Hac Vice, # 2 Proposed Order)(Flaherty, Renee) (Entered: 08/16/2018) |
| 08/16/2018 | | | Case Assigned to Judge Amy Berman Jackson. (zsth) (Entered: 08/16/2018) |
| 08/16/2018 | 3 | | SUMMONS (2) Issued Electronically as to KARYN TEMPLE CLAGGETT, JEFFERSON BEAUREGARD SESSIONS, III. (Attachments: # 1 Notice and Consent)(zsth) (Entered: 08/16/2018) |
| 08/17/2018 | 4 | | Corporate Disclosure Statement by VALANCOURT BOOKS, LLC. (Flaherty, Renee) (Entered: 08/17/2018) |
| 08/20/2018 | | | MINUTE ORDER granting 2 Motion for Leave of Robert J. McNamara to Appear Pro Hac Vice only upon condition that the lawyer admitted, or at least one member of the lawyer's firm, undergo CM/ECF training, obtain a CM/ECF username and password, and agree to file papers electronically. No court papers will be mailed to any lawyer. Signed by Judge Amy Berman Jackson on 8/20/18. (DMK) (Entered: 08/20/2018) |
| 08/21/2018 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. KARYN TEMPLE CLAGGETT served on 8/17/2018 (McNamara, Robert) (Entered: 08/21/2018) |
| 08/21/2018 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 8/17/18. (McNamara, Robert) (Entered: 08/21/2018) |
| 10/10/2018 | 7 | | NOTICE of Appearance by Daniel Riess on behalf of All Defendants (Riess, Daniel) (Entered: 10/10/2018) |
| 10/10/2018 | 8 | | Unopposed MOTION for Extension of Time to File Answer by KARYN TEMPLE CLAGGETT, JEFFERSON BEAUREGARD SESSIONS, III (Attachments: # 1 Text of Proposed Order)(Riess, Daniel) (Entered: 10/10/2018) |
| 10/11/2018 | | | MINUTE ORDER granting 8 Defendants' Unopposed Motion for Extension of Time. It is ORDERED that defendants' response to the complaint is due by November 21, 2018. Signed by Judge Amy Berman Jackson on 10/11/18. (DMK) (Entered: 10/11/2018) |
| 11/21/2018 | 9 | | ANSWER to Complaint by KARYN TEMPLE CLAGGETT, JEFFERSON B. SESSIONS, III.(Riess, Daniel) (Entered: 11/21/2018) |
| 11/30/2018 | | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER. Meet and Confer Initial Scheduling Conference set for 12/21/2018 at 9:30 AM in Courtroom 3 before Judge Amy Berman Jackson. The parties shall meet, confer, and file a Joint Report pursuant to Local Rule 16.3 by 12/14/2018. Any dates contained in the Report should be expressed as specific dates (month/day/year) rather than as time frames (e.g., "60 days after the entry of the scheduling order"). Counsel are directed to contact the Court's Deputy Clerk in the first instance to request the rescheduling of court appearances. The party seeking the change in schedule must first confer with counsel for all other parties and be prepared to provide the Deputy Clerk with proposed mutually agreeable dates. SO ORDERED. By Judge Amy Berman Jackson on 11/30/2018. (jth) (Entered: 11/30/2018) |
| 12/13/2018 | | | Set/Reset Deadlines/Hearings: At the request of Counsel for the Defendants who indicates the consent of Counsel for the Plaintiff, the Initial Scheduling Conference presently set for 12/21/2018 at 9:30 AM is reset for 1/17/2019 at 9:30 AM in Courtroom 3 before Judge Amy Berman Jackson. The Joint Report pursuant to Local Rule 16.3 is now due by 1/10/2019. (jth) (Entered: 12/13/2018) |
| 01/04/2019 | 10 | | Unopposed MOTION to Stay *Proceedings* by KARYN A. TEMPLE, MATTHEW G. WHITAKER (Attachments: # 1 Text of Proposed Order)(Riess, Daniel) (Entered: 01/04/2019) |
| 01/07/2019 | | | MINUTE ORDER granting 10 Motion to Stay. Defendants must notify the Court within two business days of the resumption of government operations and at that time propose a revised schedule for filing the joint report due on January 10, 2019. The Court will not vacate the January 17, 2018 9:30 AM Initial Scheduling Conference yet. Signed by Judge Amy Berman Jackson on 1/7/19. (DMK) (Entered: 01/07/2019) |
| 01/16/2019 | | | MINUTE ORDER. The Initial Scheduling Conference presently set for 1/17/2019 at 9:30 AM is vacated. Defendants must notify the Court within two business days of the resumption of government operations and, at that time propose both a revised schedule for filing the joint report pursuant to Local Rule 16.3 and a date for the resetting the Initial Scheduling Conference. SO ORDERED. By Judge Amy Berman Jackson on 1/16/2019. (jth) (Entered: 01/16/2019) |
| 01/29/2019 | 11 | | NOTICE *of Restoration of Appropriations* by KARYN A. TEMPLE, MATTHEW G. WHITAKER (Attachments: # 1 Text of Proposed Order)(Riess, Daniel) (Entered: 01/29/2019) |
| 01/29/2019 | | | MINUTE ORDER. In light of the government's notice 11 , the stay in this case is lifted and the parties must file a joint report pursuant to Local Rule 16.3 by February 8, 2019. The Initial Scheduling Conference will be held on February 15, 2019 at 10:00 am in Courtroom 3. SO ORDERED. Signed by Judge Amy Berman Jackson on 01/29/2019. (lcabj3) (Entered: 01/29/2019) |
| 02/08/2019 | 12 | | MEET AND CONFER STATEMENT. (Attachments: # 1 Proposed Scheduling Order)(McNamara, Robert) (Entered: 02/08/2019) |
| 02/15/2019 | | | Minute Entry for proceedings held before Judge Amy Berman Jackson: Meet and Confer Hearing held on 2/15/2019. The parties shall file a Joint Status Report by 4/1/2019. (Court Reporter: Janice Dickman) (jth) (Entered: 02/15/2019) |

| 04/01/2019 | 13 | | Joint STATUS REPORT by VALANCOURT BOOKS, LLC. (Attachments: # 1 Proposed Order)(McNamara, Robert) (Entered: 04/01/2019) |
|---|---|---|---|
| 04/02/2019 | | | MINUTE ORDER. On or before April 24, 2019, the parties shall complete their factual stipulations or request this Court to set a deadline for the close of discovery on issues related to any material facts not stipulated. It is further ORDERED that on or before April 24, 2019, the parties shall file a second joint status report, together with a proposed scheduling order setting forth a schedule for summary judgment briefing and for any necessary discovery period. SO ORDERED. Signed by Judge Amy Berman Jackson on 04/02/2019. (lcabj3) (Entered: 04/02/2019) |
| 04/05/2019 | 14 | | NOTICE of Appearance by Jeffrey H Redfern on behalf of All Plaintiffs (Redfern, Jeffrey) (Entered: 04/05/2019) |
| 04/18/2019 | 15 | | Unopposed MOTION for Extension of Time to File *Joint Status Report* by KARYN A. TEMPLE, MATTHEW G. WHITAKER (Attachments: # 1 Text of Proposed Order)(Riess, Daniel) (Entered: 04/18/2019) |
| 04/18/2019 | | | MINUTE ORDER granting 15 Motion for Extension of Time. On or before April 30, 2019, the parties shall complete their factual stipulations or request this Court to set a deadline for the close of discovery on issues related to any material facts not stipulated. It is further ORDERED that on or before April 30, 2019, the parties shall file a second joint status report, with a proposed schedule for summary judgment briefing and for any necessary discovery period. SO ORDERED. Signed by Judge Amy Berman Jackson on 04/18/2019. (lcabj3) (Entered: 04/18/2019) |
| 04/30/2019 | 16 | | Joint STATUS REPORT by KARYN A. TEMPLE, MATTHEW G. WHITAKER. (Attachments: # 1 Text of Proposed Order)(Riess, Daniel) (Entered: 04/30/2019) |
| 05/07/2019 | | | MINUTE ORDER. The Court hereby adopts the parties' proposed briefing schedule: defendants will file their motion for summary judgment and opening brief on or before July 3, 2019. Plaintiff will file its opposition to defendants' motion and its cross–motion for summary judgment in a combined brief on or before August 2, 2019. Defendants will file their reply brief in support of their motion and opposition to plaintiff's cross–motion in a combined brief on or before August 23, 2019. Plaintiff will file its reply brief in support of its cross–motion on or before September 13, 2019. SO ORDERED. Signed by Judge Amy Berman Jackson on 05/07/2019. (lcabj3) (Entered: 05/07/2019) |
| 07/03/2019 | 17 | | MOTION for Summary Judgment by WILLIAM P. BARR, KARYN A. TEMPLE (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1, # 3 Joint Stipulations of Fact, # 4 Text of Proposed Order)(Riess, Daniel) (Entered: 07/03/2019) |
| 08/02/2019 | 18 | | Cross MOTION for Summary Judgment by VALANCOURT BOOKS, LLC (Attachments: # 1 Memorandum in Support of Plaintiff's Cross–Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment, # 2 Statement of Facts Supplemental Statement of Undisputed Material Facts, # 3 Declaration of James Jenkins, # 4 Text of Proposed Order)(McNamara, Robert) (Entered: 08/02/2019) |
| 08/02/2019 | 19 | | |

| | | | |
|---|---|---|---|
| | | | Memorandum in opposition to re 17 MOTION for Summary Judgment filed by VALANCOURT BOOKS, LLC. (Attachments: # 1 Statement of Facts Supplemental Statement of Undisputed Material Facts, # 2 Declaration of James Jenkins, # 3 Text of Proposed Order)(McNamara, Robert) (Entered: 08/02/2019) |
| 08/23/2019 | 20 | | Memorandum in opposition to re 18 Cross MOTION for Summary Judgment filed by WILLIAM P. BARR, KARYN A. TEMPLE. (Attachments: # 1 Exhibit 1, # 2 Statement of Facts Response to Supplemental Statement of Facts, # 3 Text of Proposed Order)(Riess, Daniel) (Entered: 08/23/2019) |
| 08/23/2019 | 21 | | REPLY to opposition to motion re 17 MOTION for Summary Judgment filed by WILLIAM P. BARR, KARYN A. TEMPLE. (Attachments: # 1 Exhibit 1, # 2 Statement of Facts Response to Supplemental Statement of Facts, # 3 Text of Proposed Order)(Riess, Daniel) (Entered: 08/23/2019) |
| 09/12/2019 | 22 | | ERRATA re 21 Reply to opposition to Motion, filed by WILLIAM P. BARR, KARYN A. TEMPLE, 20 Memorandum in Opposition, filed by WILLIAM P. BARR, KARYN A. TEMPLE by WILLIAM P. BARR, KARYN A. TEMPLE. (Riess, Daniel) Modified event title on 9/16/2019 (znmw). (Entered: 09/12/2019) |
| 09/13/2019 | 23 | | REPLY to opposition to motion re 18 Cross MOTION for Summary Judgment filed by VALANCOURT BOOKS, LLC. (McNamara, Robert) (Entered: 09/13/2019) |
| 12/11/2020 | 24 | | ORDER. The Court ORDERS that the parties must each supplement their submissions by December 22, 2020, addressing whether defendants' offer to accept electronic copies in lieu of physical copies of the requested works renders the dispute moot. The defendants must also clarify the scope of their stated willingness to accept electronic copies of plaintiff's works. See Order for details. Signed by Judge Amy Berman Jackson on 12/11/20. (lcabj2) (Entered: 12/11/2020) |
| 12/22/2020 | 25 | | SUPPLEMENTAL MEMORANDUM re 24 Order,, Set Deadlines, by VALANCOURT BOOKS, LLC. (Attachments: # 1 Supplemental Declaration of James Jenkins)(McNamara, Robert) Modified event title on 12/30/2020 (znmw). (Entered: 12/22/2020) |
| 12/22/2020 | 26 | | SUPPLEMENTAL MEMORANDUM re 24 Order,, Set Deadlines, by WILLIAM P. BARR, KARYN A. TEMPLE. (Riess, Daniel) Modified event title on 12/30/2020 (znmw). (Entered: 12/22/2020) |
| 06/23/2021 | 27 | | NOTICE OF SUPPLEMENTAL AUTHORITY by VALANCOURT BOOKS, LLC (Attachments: # 1 Exhibit A – Cedar Point Nursery v. Hassid)(McNamara, Robert) (Entered: 06/23/2021) |
| 06/29/2021 | | | MINUTE ORDER. In light of plaintiff's 27 notice of supplemental authority, it is ORDERED that any submission by defendants as to why this opinion is not controlling must be filed by July 6, 2021. Signed by Judge Amy Berman Jackson on 6/29/21. (lcabj2) (Entered: 06/29/2021) |
| 07/02/2021 | 28 | | RESPONSE re 27 NOTICE OF SUPPLEMENTAL AUTHORITY filed by WILLIAM P. BARR, SHIRA PERLMUTTER. (Riess, Daniel) (Entered: 07/02/2021) |
| 07/23/2021 | 29 | | |

| | | | ORDER. It is ORDERED that defendants' <u>17</u> motion for summary judgment is GRANTED, and plaintiff's <u>18</u> cross motion for summary judgment is DENIED. See order for details. Signed by Judge Amy Berman Jackson on 7/23/21. (lcabj2) (Entered: 07/23/2021) |
|---|---|---|---|
| 07/23/2021 | <u>30</u> | | MEMORANDUM OPINION. Signed by Judge Amy Berman Jackson on 7/23/21. (lcabj2) (Entered: 07/23/2021) |
| 09/17/2021 | <u>31</u> | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to <u>30</u> Memorandum & Opinion, <u>29</u> Order on Motion for Summary Judgment, by VALANCOURT BOOKS, LLC. Filing fee $ 505, receipt number ADCDC–8740266. Fee Status: Fee Paid. Parties have been notified. (McNamara, Robert) (Entered: 09/17/2021) |

Valancourt Books, LLC

    *Plaintiff,*

        v.

Shira Perlmutter, et al.,

    *Defendants.*

Civil Case No. :18-cv-01922-ABJ

**NOTICE OF APPEAL**

Notice is given this 17th day of September, 2021, that Valancourt Books, LLC, the

Plaintiff in the above-named case, appeals to the United States Court of Appeals for the District

of Columbia Circuit from the memorandum opinion and order entered in this action on July 23,

2021, granting Defendants' motion for summary judgment (ECF Nos. 29 and 30).

Date September 17, 2021

Respectfully submitted,

/s/ Robert J. McNamara
Robert J. McNamara (DDC Bar # VA065)
Jeffrey Redfern (DC Bar #1018046)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: rmcnamara@ij.org, jredfern@ij.org
*Attorneys for Valancourt Books, LLC*

```
                                    )
VALANCOURT BOOKS, LLC,              )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civil Action No. 18-1922 (ABJ)
                                    )
SHIRA PERLMUTTER,                   )
   in her official capacity as the  )
   Register of Copyrights          )
   of the U.S. Copyright Office, et al., )
                                    )
            Defendants.             )
                                    )
```

## MEMORANDUM OPINION

Plaintiff Valancourt Books, LLC ("Valancourt") is an independent press based in Richmond, Virginia, and it brought this action on August 16, 2018, against defendants Shira Perlmutter, in her official capacity as the Register of Copyrights of the United States Copyright Office ("Copyright Office"), and Merrick Garland, in his capacity as Attorney General of the United States.[1] Compl. [Dkt. # 1] ¶¶ 9–10. Plaintiff alleges that the requirement in the Copyright Act that copies of every new work eligible for copyright must be deposited with the Copyright Office, 17 U.S.C. § 407, is an unconstitutional taking of private property that violates the Fifth Amendment and a burden on freedom of speech that violates the First Amendment. *Id.* ¶¶ 1–4. Plaintiff seeks a declaration that the deposit requirement is unconstitutional and an injunction blocking enforcement of the Copyright Office's mandatory book deposit requirement ("deposit requirement"). *Id.* ¶ 5.

---

[1]    Defendants have been automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

On July 3, 2019, defendants moved for summary judgment on all counts. Defs.' Mot. for Summ. J. [Dkt. # 17] ("Defs.' Mot."); Mem. in Support of Mot. for Summ. J. [Dkt. # 17-1] ("Defs.' Mem."). On August 2, 2019, plaintiff opposed the motion and cross-moved for summary judgment. Pl.'s Combined Cross Mot. for Summ. J. and Opp. to Defs.' Mot. [Dkt. # 18] ("Pl.'s Cross Mot."); Pl.'s Mem in Supp. [Dkt. # 18-1] ("Pl.'s Mem."). Upon consideration of the entire record[2] and for the reasons stated below, the Court will grant defendants' motion and deny plaintiff's cross motion.

## BACKGROUND

### I. History of the Copyright Act and its requirements

The Copyright Clause of the Constitution provides that "Congress shall have Power . . . To promote the Progress of Science . . . by securing [to Authors] for limited Times . . . the exclusive Right to their . . . Writings." U.S. Const., art. I, § 8, cl. 8. Congress first exercised this authority in 1790 when it established federal copyright protections for written work. *See* Copyright Act of 1790, 1 Stat. 124, 125.

Among the conditions imposed by Congress in connection with copyright protection, there is a requirement to provide the Library of Congress with copies of most newly published material. The deposit requirement has existed in some form from the first Congress to the present day,

---

2    *See* Joint Stipulations of Fact [Dkt. # 17-3] ("Joint SOF"); Pl.'s Suppl. Statement of Undisputed Material Facts [Dkt. # 18-2] ("Pl.'s Suppl. SOF"); Decl. of James Jenkins [Dkt. # 18-3] ("First Jenkins Decl."); Defs.' Mem. in Opp. to Pl.'s Cross Mot. for Summ. J. [Dkt. # 20] ("Defs.' Opp."); Defs.' Reply to Pl.'s Opp. to Mot. for Summ. J. [Dkt. # 21] ("Defs.' Reply"); Defs.' Revised Resp. to Pl.'s Suppl. Statement of Undisputed Material Facts [Dkt. # 22] ("Defs.' Resp. to Suppl. SOF"); Pl.'s Reply to Defs.' Opp. to Cross Mot. for Summ. J. [Dkt. # 23] ("Pl.'s Cross Reply"). The Court will use the Bates numbers for pin cites.

except for a period of six years in the mid-19th century.[3] Copyright protection was initially conditional upon the deposit of a printed copy of a work, and in 1834, the Supreme Court upheld this requirement as constitutional. *See Wheaton v. Peters*, 33 U.S. 591, 662–64 (1834).

In 1865, Congress empowered the Librarian of Congress to demand copies of works that had not been deposited within one month of their publication, and failure to comply would result in forfeiture of the work's copyright. Act of Mar. 3, 1865, ch. 126, § 3, 13 Stat. 540, 540. Two years later, Congress added a $25 penalty for non-compliance. Act of Feb. 18, 1867, ch. 43, § 1, 14 Stat. 395, 395. By 1909, Congress amended the Copyright Act to require that two copies of a work be deposited with the Copyright Office, "after [a] copyright [was] secured by publication of the work with . . . notice." Act of Mar. 4, 1909, § 12, 35 Stat. 1075, 1078. In the event the two copies were not deposited, the Register of Copyright could make a formal demand that the deposit be made within three months, or the copyright holder would risk both forfeiture of the copyright and the imposition of a $100 fine. *Id.* § 13.

In 1976, section 407 of the Copyright Act was enacted; it eliminated the copyright forfeiture penalty for failure to meet the deposit requirement, but increased the fine to $250 per work. Copyright Act of 1976, Pub. L. No. 94-553, § 407(a), (d)(1), 90 Stat. 2541, 2579, codified as amended at 17 U.S.C. § 407(a), (d)(1).

In 1988, Congress amended section 407 by the Berne Convention Implementation Act. Berne Convention Implementation Act of 1988, Pub. L. No. 100-568, §8, 102 Stat. 2853, amending 17 U.S.C. § 101 *et seq*. It explained that this modification was made in order to bring U.S. copyright law in line with that of other countries; in amending section 407, Congress did not

---

3    *See* Copyright Act 1790, ch. 15, §§ 3–4, 1 Stat. 124, 125; Act of Aug. 10, 1846, ch. 178, § 10, 9 Stat. 102, 106; Act of Mar. 3, 1865, ch. 126, § 2, 13 Stat. 540, 540; Act of Mar. 3, 1891, ch. 565, § 3, 26 Stat. 1106, 1107; Act of Mar. 4, 1909, ch. 320, § 9, 35 Stat. 1075, 1077.

change the deposit requirement, but it eliminated copyright notice as a condition of copyright. *See* Joint SOF ¶ 42, citing the Berne Convention for the Protection of Literary and Artistic Works.[4] The language of section 407 has not been subsequently amended.

Today, the Copyright Act provides that "the owner of copyright . . . shall deposit [in the U.S. Copyright Office], within three months after the date of . . . publication . . . two complete copies of the best edition" of the published work. 17 U.S.C. § 407(a).[5] If the owner of the copyright does not provide copies of the work to the Copyright Office, the Register of Copyrights may send a written demand, and if the copyright owner still has not complied after three months, a fine of $250 plus the price of the work at retail may be levied. 17 U.S.C. § 407(d). If there is a "willful" or "repeated" failure to comply with the deposit requirement, an additional fine of up to $2,500 may be imposed on the copyright owner. *Id.*

---

4     *See also* Ex. 1 to Defs.' Mot., Committee on the Judiciary Report on the Berne Convention Implementation Act of 1988, [Dkt. # 17-2] ("Congressional Report") at 45 ("Since noncompliance with the mandatory deposit requirement does not result in forfeiture of any copyright protection, [it] is compativle [sic] with Berne. However, elimination of the copyright notice as a condition of copyright requires an amendment to section 407 of the Copyright Act.").

5     There are, in fact, two deposit requirements in the Copyright Act: section 407, which is tied to the act of publication and section 408, which is tied to the copyright registration process. Because this dispute challenges the constitutionality of section 407, the Court will not discuss the deposit requirement imposed by section 408.

The Register of Copyrights is authorized to promulgate exceptions to the deposit requirement in certain situations:

> The Register of Copyrights may be regulation [sic] exempt any categories of material from the deposit requirements of this section, or require deposit of only one copy or phonorecord with respect to any categories. Such regulations shall provide either for complete exemption from the deposit requirements of this section, or for alternative forms of deposit aimed at providing a satisfactory archival record of a work without imposing practical or financial hardships on the depositor, where the individual author is the owner of copyright in a pictorial, graphic, or sculptural work and (i) less than five copies of the work have been published, or (ii) the work has been published in a limited edition consisting of numbered copies, the monetary value of which would make the mandatory deposit of two copies of the best edition of the work burdensome, unfair, or unreasonable.

17 U.S.C. § 407(c).

## II. Factual and procedural background[6]

Plaintiff Valancourt is an independent press based in Richmond, Virginia, that publishes "rare, neglected, and out-of-print fiction" and operates on a print "on-demand" model out of the owners' home. Joint SOF ¶¶ 4, 12, 23.[7] On June 11, 2018, plaintiff received a demand letter from the Copyright Acquisition Division of the Copyright Office requesting a copy of all 341 books in its catalog. *Id*. ¶ 71–73; Ex. A. to Joint SOF [Dkt. # 17-3] ("First Email from Copyright Office"); Ex. B. to Joint SOF [Dkt. # 17-3] ("First Demand Letter"); Ex. C to Joint SOF [Dkt. # 17-3] ("First Sample Notice for Mandatory Deposit of Copies"). Plaintiff replied on June 12, 2018, asking the Copyright Office to withdraw its request and offering to sell the books "at [Valancourt's] costs

---

6     The following facts are undisputed unless otherwise noted.

7     The parties agreed to file a stipulation of material facts in lieu of engaging in discovery. *See* Joint SOF. However, both parties have supplemented this joint statement. *See* Pl.'s Suppl. SOF; *see also* Defs.' Resp. to Suppl. SOF.

with no markup."  Joint SOF ¶ 76; Ex. D to Joint SOF [Dkt. # 17-3] ("First Email from Valancourt").

At the time of this exchange in June 2018, Valancourt had already sent more than one hundred of the 341 requested titles to the Library of Congress in exchange for catalog control numbers.  But it "determined that the cost of sending each new title . . . was greater than the value the business obtained from the catalog control number, and [it] discontinued the practice." Joint SOF ¶ 62.

On August 9, 2018, the Copyright Office reiterated its position that plaintiff was required to deposit "any book contain[ing] . . . 'copyrightable' material," Compl. ¶ 55, and it informed plaintiff that Valancourt's earlier practice of depositing works in exchange for a catalog control number did not meet the deposit requirement of section 407.  Joint SOF ¶ 78; Ex. E to Joint SOF [Dkt. #17-3] ("Second Email from Copyright Office").  The Copyright Office's updated demand letter reduced the total number of requested books from 341 to 240; it explained a review of the titles in plaintiff's catalog revealed that a number of the books consisted entirely of reprinted material from the public domain.  *Id.* ¶ 79; *see also* Ex. F to Joint SOF [Dkt. # 17-3] ("Updated Demand Letter"); Ex. G to Joint SOF [Dkt. # 17-3] ("Second Sample Notice for Mandatory Deposit of Copies").

On August 16, 2018, plaintiff filed the instant lawsuit.  *See* Compl.  In March of 2019, the Copyright Office notified plaintiff that it would be permitted to submit the 240 requested copies of its works electronically, rather than in print.  Joint SOF ¶¶ 59–61 (noting that Valancourt's June 12, 2018 email "was not treated as a request for 'special relief'" pursuant to 37 C.F.R. § 202.19(e)(3)); *see also* Pl.'s Suppl. SOF ¶¶ 7–8; First Jenkins Decl. ¶ 10; Defs.' Resp. to Suppl. SOF ¶¶ 7–8.

In December 2020, the Court ordered the parties to supplement their submissions, "addressing whether defendants' offer to accept electronic copies in lieu of physical copies of the requested works renders the dispute moot," and it asked the defendants to clarify their offer to accept electronic copies of plaintiff's works. Order of December 11, 2020 [Dkt. # 24] ("December 2020 Order") at 3; *see also* Pl.'s Suppl. Brief [Dkt. # 25] ("Pl.'s Suppl."); Suppl. Decl. of James Jenkins [Dkt. # 25-1] ("Suppl. Jenkins Decl."); and Defs.' Suppl. Brief Addressing Mootness [Dkt. # 26] ("Defs.' Suppl."). Defendants have clarified that the Copyright Office's offer to accept electronic copies applies to both the 240 works at issue and all future Valancourt works as well. Defs.' Suppl. at 6. The parties have also addressed the impact of the Supreme Court's recent opinion in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021). *See* Pl.'s Notice of Suppl. Authority [Dkt. # 27]; *see also* Defs.' Resp. to Pl.'s Notice [Dkt. # 28].

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a

reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. Dist. of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

### I. The dispute between the parties has been narrowed, but not rendered moot, by the Copyright Office's offer to accept electronic copies in lieu of physical copies.

Before reaching plaintiff's constitutional claims, the Court must decide the threshold jurisdictional question of whether this dispute is moot in light of the Copyright Office's offer to accept electronic versions of the outstanding 240 works and all future works.

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."); *see also Conserv. Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."), quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). Subject matter jurisdiction may not be waived, and "courts may raise the issue *sua sponte*." *NetworkIP,*

8

*LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982). Indeed, a federal court must raise the issue because it is "forbidden . . . from acting beyond [its] authority, and 'no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Id.*, quoting *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).

Moreover, the "fundamental and longstanding principle of judicial restraint" requires a court to "avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (collecting cases).

Plaintiff explains that it rejected the offer to comply electronically for two reasons. First, it "objected to the idea that [Valancourt] would receive 'special' treatment for no articulated reason" while defendants could threaten to cripple other small publishers. Pl.'s Suppl. at 2. Second, it explained that its works were not already accessible in that format, and that "finding digital copies of its old books would require Valancourt's cofounders to spend several hours searching old computers and looking through external storage media" and converting them to .pdf or .doc formats. Pl.'s Suppl. at 2–3. It asserts that the controversy is live because: (1) the "special relief" is an unaccepted settlement offer; (2) plaintiff cannot rely on the policy change because defendants could potentially withdraw the promise to accept electronic copies; and (3) even the demand for electronic copies gives rise to a concrete, ongoing injury. Pl.'s Suppl. at 2–4.

Defendants acknowledge that the action would not be moot if plaintiff were to refuse to send the required copies electronically, but they emphasize that their offer reduces the burden on plaintiff substantially. Defs.' Suppl. at 2.

A case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke*

9

*v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990), quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990). In determining whether a dispute is moot, the Court must "defin[e] the wrong that the defendant is alleged to have inflicted." *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020), quoting *Clarke*, 915 F.2d at 703. Plaintiff's stated concerns about unfairness to other companies that are not parties to this dispute do not factor in the determination of whether the case presents a live controversy. *See* Pl.'s Suppl. at 2. But plaintiff alleges that in order to comply with the alternative means of satisfying the deposit requirement, it must spend time and energy, however minimal, to search its electronic records and update the formatting of its materials to meet modern standards. *See id.* at 2–3. Plaintiff concedes that the harm that it currently faces is less burdensome in light of the Copyright Office's concession. *See id.* at 4; Defs.' Suppl. at 6. But a lessening of the harm does not moot the entire case; "it is well understood that 'the fact that one aspect of a lawsuit becomes moot does not automatically deprive a court . . . over remaining, live aspects of the case.'" *Zukerman*, 961 F.3d at 443, quoting *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003).

Therefore, because plaintiff has rejected the Copyright's Office's offer to accept electronic copies of its works, the Court concludes that the dispute is live.

## II. Plaintiff's Fifth Amendment claim fails because the deposit requirement is not an unconstitutional taking, but it is a voluntary exchange in return for federal copyright protection.

In Count One of the complaint, plaintiff alleges that the deposit requirement in section 407 of the Copyright Act is an unconstitutional taking because the government is demanding copies of publishers' works for its own use without providing compensation to the affected private parties. Compl. ¶ 1; Pl.'s Mem. at 18. But this argument is not supported by Supreme Court precedent or by the persuasive decision of the only circuit that has considered the issue.

10

**A. The deposit requirement does not contravene Supreme Court authority.**

The U.S. Constitution states that "nor shall private property be taken for public use, without just compensation." U.S. Const. amend V ("Takings Clause"). But the Supreme Court has explained that a statute that confers a "benefit" on a citizen may condition the receipt of that benefit on the submission of private property in exchange without running afoul of the Takings Clause. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1007 (1984).

In *Monsanto*, the Supreme Court held that the Environmental Protection Agency could require chemical companies to disclose health and environmental safety information, including proprietary trade secret information, as a condition of their receipt of a license to market certain products. The court reasoned that because the chemical manufacturers received a "valuable Government benefit" – the license to sell the chemicals – the mandate to disclose the information was not an unlawful taking. *Id.* at 1007.

In its initial memorandum, plaintiff maintained that the holding in *Monsanto* did not survive the Supreme Court's subsequent opinion in *Horne v. Dep't of Agric.*, 576 U.S. 350 (2015). Pl.'s Mem. at 23–24.

In that case, the Supreme Court was asked to consider the constitutionality of a Departmental requirement that raisin farmers set aside a percentage of their crop each year so that the agency could moderate the raisin market. *Horne*, 576 U.S. at 364–65. The Court started with the proposition that a "classic taking [is one] in which the government directly appropriates private property for its own use," *id.* at 357, quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002), and it noted that there is no dispute that in the case of real property, "such an appropriation is a *per se* taking that requires just compensation." *Id.* at 358 (emphasis in original). The Court went on to hold that there was nothing in the text or the history

11

of the clause or its own precedents to suggest that the rule would be different in the case of the appropriation of personal property: "[t]he Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home." *Id.*

With respect to the dispute before it, the Supreme Court noted that the growers were obligated to physically surrender the actual raisins, and that the government assumed possession and control "as if [it] held full title and ownership." *Id.* at 362. Given those facts, the Court concluded that the regulatory reserve requirement was an unconstitutional taking because the raisin growers were required to give up the full measure of their property rights simply because they chose to participate in the raisin market. *Id.* at 364–65.

The Court distinguished the regulatory reserve requirement in *Horne* from the participation in a "voluntary exchange" at issue in *Monsanto* because the right to participate in the open market for raisins was not a "governmental benefit" – any grape grower could choose to do it – while a license to sell chemicals was a valuable opportunity that was not otherwise available to manufacturers, and could therefore be conditioned upon the submission of something of value to the government in return. 576 U.S. at 365–66.

> Selling produce in interstate commerce, although certainly subject to reasonable government regulation, is similarly not a special governmental benefit that the Government may hold hostage, to be ransomed by the waiver of constitutional protection. Raisins are not dangerous pesticides; they are a healthy snack.

*Id.* at 366; *see also id.* ("We have already rejected the idea that *Monsanto* may be extended by regarding basic and familiar uses of property as a 'Government benefit' on the same order as a permit to sell hazardous chemicals."), citing *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 834 n.2 (1987) (distinguishing *Monsanto* because "the right to build on one's own property – even though its exercise can be subjected to legitimate permitting requirements – cannot remotely be described

as a 'governmental benefit.'"). Thus, while the Court came to a different conclusion in *Horne*, the Court did not, and it did not purport to, overrule *Monsanto.*

Notwithstanding plaintiff's arguments to the contrary, the deposit requirement is more akin to the *Monsanto* exchange for a benefit only the government can confer than to the *Horne* mandate to relinquish specific property simply because one has decided to engage in interstate commerce. Publishers are not required to make the deposit in order to print books or to sell them; the obligation is a condition of the receipt of the governmental benefit of copyright protection.

Plaintiff includes a notice of copyright in its books. *See* Ex. 1 to Defs.' Reply [Dkt. # 20-1] ("Sample Copyright Notice"); *see also* Compl. ¶ 30. As defendants explain, "the result of that voluntary choice was that the public was informed as to whether th[o]se works were copyrighted, potential infringers were thereby deterred, and no innocent-infringement defense is available to any such infringers." Defs.' Reply at 15. Since, as the defendants point out, "[p]laintiff has taken voluntary action to receive the benefits afforded under federal copyright law, and has declined to take action to opt out of receiving such benefits," Defs.' Mem. at 21 (capitalizations omitted), the case is governed by *Monsanto*; plaintiff is voluntarily engaging in the exchange of copies of its works for copyright protection, and it is receiving something beyond mere participation in the

market in return, so the deposit requirement does not constitute a physical taking without just compensation.[8]

Finally, the Court notes that the Supreme Court recently addressed its Takings Clause jurisprudence again in the context of the use of real property in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021). *See* Pl.'s Notice of Suppl. Authority [Dkt. # 27]; *see also* Defs.' Resp. to Pl.'s Notice [Dkt. # 28]. Plaintiff submits that the case is dispositive in its favor, but it serves to confirm the Court's conclusion that *Monsanto* remains good law and that it governs this situation.

In *Cedar Point Nursery*, the Court held that a California regulation that authorized union organizers to appear on farm property to talk with employees, even when the farm owners had denied them access, was unconstitutional. 141 S. Ct. at 2080. It reasoned that the entry was a taking of private property under the Fifth Amendment without just compensation because the government created a right to "invade" and occupy the private property. *Id.*

The Supreme Court repeated the basic principles that had been recited in *Horne*: "[w]hen the government physically acquires private property for . . . public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *Cedar Point Nursery*, 141 S. Ct. at 2071. It compared the situation before it to a "tak[ing] away" of real property, *id.* at 2074, and stated that "[g]overnment action that physically appropriates property is

_____

8    Plaintiff submits that the benefit it derives from copyright law is "effectively nonexistent" unless and until the copyright holder registers the copyright pursuant to section 408 of the Copyright Act. *See* Pl.'s Mem. at 23 ("[A] publisher required to deposit under § 407 gives up its property and receives nothing back; both before and after deposit, the publisher's sole 'benefit' is the background existence of the copyright system itself."). But plaintiff has elected to hold itself out to would-be infringers as covered under the umbrella of the Copyright Act, and it can register its copyright at any time and enforce the protection afforded by the government that it announces in its notice. And plaintiff already enjoys some of the benefits of copyright protection without registration. *See also* Defs.' Opp. at 9 n.2 (noting the benefits of copyright protection, even in the absence of registration, include anti-circumvention protection, remedies for copyright infringement, notice and takedown provisions, and criminal copyright protection).

14

no less a physical taking [when] it arises from a regulation." *Id.* at 2072, citing *Horne*, 576 U.S. at 361.

It is not at all clear how this principle developed in the context of "real property," or even actual personal property such as the raisins, would apply to a requirement that can be fulfilled by the transmission of digital copies that would not divest the publisher of its interest in any tangible property whatsoever.

More important, though, the Court specifically distinguished the taking in *Cedar Point Nursery* from a conditional action, and reiterated that it is not unconstitutional to require a party to transfer property in exchange for a government benefit: "the government may require property owners to cede a right of access as a condition of receiving certain benefits, without causing a taking." *Cedar Point Nursery*, 141 S. Ct. at 2079. The Court cited *Monsanto* as an example of a conditional government "grant of a benefit such as a permit, license, or registration" that explicitly falls outside the *per se* takings framework established in *Cedar Point Nursery*. *Id.* This reinforces the Court's conclusion that the deposit requirement is constitutional under *Monsanto* line of precedent and can be easily distinguished from *Horne*.

### B. The available circuit authority supports the constitutionality of the deposit requirement.

There is no Supreme Court case specifically addressing the deposit requirement under the Takings Clause. In 1985, however, the Ninth Circuit took up the issue, and the Court finds its analysis instructive for purposes of the instant case.

In *Ladd v. Law & Tech. Press*, 762 F.2d 809 (9th Cir. 1985), the Register of Copyrights brought an action against a copyright holder to recover the statutory penalties for failure to meet the deposit requirement. The copyright holder refused to pay the fees, arguing both that the deposit requirement was not "necessary and proper" to execute the powers granted to Congress under

15

Article I, section 8 of the Constitution, and that it was a taking of private property without just compensation in violation of the Fifth Amendment. *Id.* at 812–13. The Registrar of Copyrights took the position that it was a condition that was legitimately attached to the grant of a benefit. *Id.* at 813.

The Ninth Circuit noted that "[t]here is no question but that the materials are private property and that deposit with the Library is for a public use," but it found that "Congress indubitably can place conditions on the grant of a statutory benefit." *Ladd*, 762 F.2d at 813. It then dispensed with several arguments advanced by the copyright owner as to why deposit was not a valid condition. First, it disagreed with the contention that the deposit condition was not sufficiently related to the benefit conferred through the grant of copyright protection because the appropriate test only requires that the statutory condition further a related government interest. *See id.* at 813–14, citing *Monsanto*, 467 U.S. at 1007. It found: "The Copyright Clause grants copyright protection for the purpose of promoting the public interest in the arts and sciences. Conditioning copyrights on a contribution to the Library of Congress furthers this overall purpose." *Ladd*, 762 F.2d at 814.

Second, the owner argued that since the 1976 revision of the Copyright Act specified that the deposit requirement would no longer be a condition for obtaining copyright protection, the Supreme Court case law governing statutory conditions was not applicable. The court rejected this as well:

> [A] complete reading of section 407 reveals that deposit is indeed still required of one obtaining a copyright, although protection of the copyright laws is not lost by failure to comply. The 1976 amendment merely changes the method by which the deposit requirement is enforced.
>
> The previous law obligated the owner of a copyright, after publication, to deposit two copies with the Library. If the owner chose not to do so, the copyright was forfeit. The new law has taken away that choice

> about deposit. Once publication with copyright notice has occurred, the owner *must* deposit.

*Ladd*, 762 F.2d at 814. Finally, the court distinguished cases cited by the owner involving governmental appropriation of patented devices. *See id.* at 815 ("[I]n none of these cases did the government act pursuant to any statutory scheme making government use a condition of patentability. Second, the government was not acting as a sovereign to further the public welfare by promoting arts and sciences; instead it appropriated the patented device for a proprietary purpose.") (collecting cases).[9]

Plaintiff does not contend that the Ninth Circuit's decision was erroneous at the time. Rather, it submits that subsequent amendments to the deposit requirement have rendered the provision "meaningfully different," Pl.'s Mem. at 20, and that the constitutionality of section 407 should be reexamined in light of the change. *Id.* at 20–23. It also asserts that the Supreme Court's decisions that came after *Ladd*, which relied on *Monsanto*, require a different outcome. *Id.* at 23–24.

### 1. The 1988 amendment to section 407 did not meaningfully change the deposit requirement.

According to plaintiff, *Ladd* was explicitly conditioned on the premise that copyright holders "voluntarily sought" copyright protection, but now, the protection attaches as soon as a work is published, even in the absence of a notice, as long as the owner is based in the United States. Pl.'s Mem. at 21, citing 17 U.S.C. § 104(b)(i). Plaintiff argues that because material is

---

9       The *Ladd* court also found that the deposit requirement was an appropriate exercise of Congressional authority under the Copyright Clause of the Constitution. While Ninth Circuit authority is not binding in this jurisdiction, the D.C. Circuit cited the opinion favorably when it was called upon to determine whether the Copyright Term Extension Act of 1988 was a proper exercise of Congressional power under Article I, § 8. *See Eldred v. Reno*, 239 F.3d 372, 379 (D.C. Cir. 2001), *aff'd sub nom. Eldred v. Ashcroft*, 537 U.S. 186 (2003).

"copyrighted automatically" before the copyright holder must make its deposit to the Library of Congress, it is no longer exercising a choice to exchange a copy of its work for protection, and therefore, the deposit requirement is an unconstitutional taking. *See* Pl.'s Mem. at 12, 21 ("Under the original system of copyright . . . a publisher was faced with a choice of either depositing the books or forfeiting the copyright.").

It is true that in *Ladd*, the Registrar argued that "[b]y voluntarily choosing to avail itself of the benefit," the copyright owner had "accepted the condition of deposit." 762 F.2d at 813. But the voluntary exchange was not the linchpin of the Ninth Circuit's decision; it was mentioned only in its summary of the Registrar's position. *Id.* Instead, the court emphasized that the deposit was a valid condition in return for the *receipt* of the public benefit, *id.* at 814 ("[D]eposit is indeed still required of one obtaining a copyright."), and it characterized it as a condition even though failure to pay would not trigger a forfeiture. *Id.*

Plaintiff is correct that the change made in 1988 to section 407 mandated that the deposit requirement applies to all copyright holders upon publication, not upon notice of copyright. But Congress took pains to specify that this would not be a substantive change from the pre-1988 requirement: "[t]he elimination of copyright notice as a factor in subjecting works to mandatory deposit does not have constitutional significance" because "only those works published in the United States in which copyright is claimed are subject to mandatory deposit." Congressional Report at 44.[10]

---

10    This is consistent with the Supreme Court's observation in 1834 – in the one case in which it discussed the deposit requirement – that the right may vest before all conditions are perfected, and other acts are to be done "unless [C]ongress have legislated in vain, to render the right perfect." *Wheaton*, 33 U.S. at 665.

And in any event, while the provision alters the *timing* of when the deposit requirement would be triggered for some publishers, it does not for Valancourt, which published its works with a notice of copyright.  *See* Sample Copyright Notice; *see also* Compl. ¶ 30.  And as defendants note, consistent with the notion that deposit is a condition of the benefit conferred, plaintiff could avoid the deposit obligation by filing a notice of abandonment of the copyrighted work with the Copyright Office.  *See* Defs.' Reply at 19.

For these reasons, the reasoning behind the Ninth Circuit's decision remains instructive, and the Court finds that the 1988 amendment to section 407 did not change the fundamental nature of the deposit requirement:  it is still a modest exchange for the public good in return for the receipt of a private benefit held out to the public.

### 2.  The deposit requirement is a condition of a voluntary government benefit, unless the owner disavows copyright.

Plaintiff also contends that because the change in section 407 "d[id] not condition the enjoyment of copyright protection on any voluntary act by anyone," Pl.'s Mem. at 22, it is not a "condition" that the government may impose.

But this is merely another way of phrasing the argument the Court has just rejected.  The deposit requirement is not a prerequisite for seeking a copyright; it is a condition of *receipt of the benefit* of copyright protection.  Plaintiff insists that it has never sought or exercised the protections of copyright ownership, but the complaint specifically alleges that, despite the age of many of the works in the public domain that plaintiff publishes, the "editorial enhancements that Valancourt adds to the works – such as scholarly introductions and footnotes – are subject to U.S. Copyright protection."  Compl. ¶ 30.

In other words, plaintiff wants to have its cake and eat it too.  It regularly warns the public that its introductions and editorial changes are subject to protection, while claiming here that it

19

should not be bound by the deposit requirement that is triggered by its receipt of that government benefit. The fact that plaintiff's position is disingenuous and inconsistent is further demonstrated by plaintiff's failure to disavow the copyright protection even though the Copyright Office has stated that it would withdraw the deposit request if it did so. *See* Defs.' Mem. at 24.

**3. Subsequent Supreme Court precedent does not undermine the conclusion in *Ladd*.**

Plaintiff also suggests that the Supreme Court authority the Ninth Circuit relied upon in *Ladd* has been abrogated by subsequent decisions. But as the Court has detailed above, *Horne* did not alter the principles articulated in *Monsanto,* and in *Cedar Point Nursery*, the Court again took pains to explicitly differentiate the situation in *Cedar Point Nursery* and *Horne* from a required exchange that is a condition of the receipt of a public benefit. 141 S. Ct. at 2080 ("[U]nlike standard health and safety inspection [regimes like *Monsanto*], the access regulation is not germane to any benefit provided to agricultural employers or any risk posed to the public."), citing *Horne*, 576 U.S. at 366.

**III. Plaintiff's First Amendment claim fails because the deposit requirement does not unduly burden speech.**

In Count Two, plaintiff challenges the deposit requirement's constitutionality under the First Amendment. Compl. ¶¶ 1, 4. It asserts that strict scrutiny should apply because the deposit requirement is essentially a content-based restriction on speech. Pl.'s Mem. at 31. In the alternative, plaintiff submits that even if the deposit requirement is content-neutral, it is unconstitutional "because it imposes burdens on speech that are wildly disproportionate to any benefit derived by the government." *Id.* at 12.

## A. The deposit requirement is not a content-based restriction on speech.

The Court agrees with the defense that the deposit requirement embodied in the federal copyright statute is not subject to strict scrutiny under the First Amendment because it is entirely content-neutral. *See* Defs.' Mem. at 27.

"Government regulation of speech is content based if a law applies to a particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A regulation can be content-based "on its face" if it "draws [a] distinction[] based on the message a speaker conveys," or if in effect, its justification or purpose differentiates speakers by content. *Id.* at 163–66. If a regulation is content-based, then strict scrutiny must be applied. *See Pursuing America's Greatness v. FEC*, 831 F.3d 500, 509 (D.C. Cir. 2016) ("If a law, by its terms, discriminates based on content, we apply strict scrutiny 'regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech.'") (internal quotation marks omitted), quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 165 (2015); *see also Sorrell v. IMS Health*, 564 U.S. 552, 563–64 (2011) (holding that a content-based restriction on speech is subject to heightened scrutiny under the First Amendment).

Here, the deposit requirement is a not a content-based mandate on its face; all publications in the United States must comply, regardless of the subject matter, author, or publisher involved. *See* 17 U.S.C. § 407. Plaintiff points out that "the purpose of the mandatory deposit requirement is to help build the collections of the Library of Congress," *see* Pl.'s Mem. at 34, but the mere fact that the content of every published work will become part of the Library's collection does not mean that the law applies to any individual publication "because of" its content. The fact that the

rule applies across the board means exactly the opposite: the government is not differentiating between speakers based on content at all.

Plaintiff concedes that all U.S.-published books are subject to the deposit requirement. *See* Pl.'s Mem. at 35. But it argues that because only those publishers that receive a demand letter from the Copyright Office can be fined for noncompliance, and the letters are not sent out at random, the deposit requirement is also a content-based restriction in practice. *Id.* at 35–37. However, this raises questions about the Copyright Office's discretionary enforcement of the deposit requirement, and not the deposit requirement itself that is challenged in Count Two, and the mere assertion that the Office pursues some cases and not others does not rise to the level of a showing that those decisions were based on content. Indeed, there is nothing in the record that would begin to suggest that the Copyright Office has any problem with the republication of classic works of literature in particular.

Therefore, the Court concludes that the requirement is not a content-based restriction on speech that would require the application of strict scrutiny.[11]

---

11    The notion that the copyright regime as a whole somehow intrudes upon publishers' First Amendment rights has been repeatedly rejected by the Supreme Court. *See Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003), quoting *Harper & Row, Publishers, Inc., v. Nation Enters.*, 471 U.S. 539, 558 (1985):

> The Copyright Clause and First Amendment were adopted close in time. This proximity indicates that, in the Framers' view, copyright's limited monopolies are compatible with free speech principles. Indeed, copyright's purpose is to *promote* the creation and publication of free expression. As *Harper & Row* observed: "[T]he Framers intended copyright itself to be the engine of free expression.

While the Supreme Court has recognized that copyrights are not "categorically immune from challenges under the First Amendment," it admonished in *Eldred* that when "Congress has not altered the traditional contours of copyright protection, further First Amendment scrutiny is unnecessary." 537 U.S. at 221.

**B. The burden imposed by the deposit requirement is not disproportionate to the benefits enjoyed by plaintiff and the general public.**

Finally, plaintiff argues that any burden on speech, regardless of its relationship to content, should be struck down if it is broader than necessary to advance the government's interest. *See* Pl.'s Mem. at 37.

The first problem with this argument is that the Court agrees with the decision of the Ninth Circuit in *Ladd* that the deposit requirement does not burden free speech at all. In that case, the publisher also argued that the deposit requirement violated the Constitution because it burdens the publication of material protected by First Amendment. But the court observed:

> Press ignores the fact that the deposit requirement does not burden the first amendment concerns of expression and dissemination of ideas . . . . Deposit is not triggered by the publication of ideas. It comes into play only if the publisher voluntarily seeks the statutory benefit of copyright. The first amendment does not protect the right to copyright, and therefore a condition placed on copyright protection does not implicate first amendment rights.

*Ladd*, 762 F.2d at 815 (internal citations omitted).

Even if one were to accept the plaintiff's premise that the deposit requirement burdens a publisher's right to expression in some way, the *Ladd* court's reasoning with respect to the necessary and proper clause is also instructive as to why the burden is not greater than necessary for purposes of the First Amendment. The Ninth Circuit underscored that the primary purpose of the Copyright Clause "is to promote the arts and sciences for the public good," 762 F.2d at 812 (collecting cases), and it concluded that therefore, the provision of the Copyright Act which sustains a national library for the public use was necessary and proper. *Id.* Similarly for purposes of the First Amendment, the requirement is well-tailored to further the public interest in promoting the arts and sciences with a public repository, and it imposes an obligation that is no greater than necessary to achieve that important public goal.

Plaintiff contends that the economic burdens on speech imposed by the Copyright Act, such as "[b]eing compelled to give away books – or alternatively pay fines" are so burdensome that they "must be justified by the government just as surely as an outright ban" on speech. Pl.'s Cross Reply at 13–14. It cites *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454 (1995), but that case has very little bearing on the one at hand.

In *National Treasury*, the Supreme Court struck down section 501(b) of the Ethics in Government Act, which prohibited government employees from accepting honoraria. The court held that although the provision did not bar speech entirely or discriminate among speakers based on content or viewpoint, the "prohibition on compensation unquestionably impose[d] a significant burden on expressive activity." 513 U.S. at 468. In the Court's view, section 501(b) operated to discourage potential speech because it required federal employees "to curtail their expression if they wish[ed] to continue" their employment, and that substantial chilling effect outweighed the legislature's concerns about the potential disruption in the workplace that might result from paid speeches. *Id.* at 469–70. The Court distinguished the case from *Civil Serv. Comm'n v. Letter Carriers*, 413 U.S. 548 (1973), which upheld the prohibition in the Hatch Act on partisan activity by federal employees, because it "aimed to *protect*" rights, not restrict them. *Nat'l Treas.*, 513 at 470–71 (emphasis in original), citing *Letter Carriers*, 413 U.S. at 566.

It is hard to articulate how that line of cases is in any way analogous to the situation here. To the extent those precedents must be considered, it can be said that the deposit requirement is more akin to the circumstances in *Letter Carriers* than in *National Treasury*, because it is part of a federal copyright scheme that encourages and protects expression, rather than restricting or chilling the right to speak. Defendants emphasize once again that "the deposit provision does not apply to any publisher that agrees to forego copyright protection for its works," and therefore, it is

24

merely an incidental cost associated with a government benefit. Defs.' Reply at 21. And there is also the benefit to the public to be considered in this exchange, since any burden on expressive activity is designed to further the interest underlying the Copyright Act – the advancement of the national interest in the arts and sciences.

Here, the burden of complying with the deposit requirement is minimal given the offer to accept digital copies of plaintiff's works. Plaintiff has attested to the effort this may involve, *see* Pl.'s Suppl. at 2–3 (describing the time it will take to re-catalog Valancourt's out-of-print materials and convert some files to more modern software formats), but it is free to choose between devoting the time needed to generate the digital copies at no financial cost, submitting hard copies of the works at a modest cost, or disavowing copyright protection altogether. Under those circumstances, the requirement does not contravene the First Amendment.

At bottom, Valancourt is asking this Court to substitute its judgment for a decision Congress made more than two hundred years ago. But the Supreme Court has consistently cautioned against that approach. In *Eldred v. Ashcroft*, the Court reminded the parties that it had "stressed . . . that it is generally for Congress, not the courts, to decide how best to pursue the Copyright Clause's objectives." 537 U.S. at 212. It then recited its statements in *Stewart v. Abend*, 495 U.S. 207, 230 (1990) ("Th[e] evolution of the duration of copyright protection tellingly illustrates the difficulties Congress faces . . . . [I]t is not our role to alter the delicate balance Congress has labored to achieve."); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984) ("[I]t is Congress that has been assigned the task of defining the scope of [rights] that should be granted to authors or to inventors in order to give the public appropriate access to their work product."); and *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 6 (1966) ("Within the limits of the constitutional grant, the Congress may, of course, implement the stated

purpose of the Framers by selecting the policy which in its judgment best effectuates the constitutional aim."). *Eldred*, 537 U.S. at 212–13.

## CONCLUSION

For all of these reasons, the Court will grant defendants' motion for summary judgment and enter judgment in favor of the defendants, and it will deny plaintiff's cross motion for summary judgment. A separate order will issue.

_____
AMY BERMAN JACKSON
United States District Judge

DATE: July 23, 2021

VALANCOURT BOOKS, LLC,            )
                                  )
            Plaintiff,            )
                                  )
    v.                            )     Civil Action No. 18-1922 (ABJ)
                                  )
SHIRA PERLMUTTER,                 )
    *in her official capacity as the*  )
    *Register of Copyrights*      )
    *of the U.S. Copyright Office*, *et al.*,  )
                                  )
            Defendants.           )

## ORDER

Pursuant to Federal Rules of Civil Procedure 56 and 58, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that defendants' motion for summary judgment, [Dkt. # 17], is **GRANTED**, and plaintiff's cross motion for summary judgment, [Dkt. # 18], is **DENIED**.

AMY BERMAN JACKSON
United States District Judge

DATE: July 23, 2021