IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALANCOURT BOOKS, LLC, | ) |
| | )   Civil Action No. 1:18-cv-01922-ABJ |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SHIRA PERLMUTTER, in her official capacity as Register of Copyrights, United States Copyright Office *et al.*, | ) ) ) |
| | ) |
|     Defendants. | ) |
| | ) |

**DEFENDANTS' MEMORANDUM OF LAW REGARDING REMEDIES**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

    I.    Statutory and Regulatory Background .......................................................................... 2

    II.   The Present Action ....................................................................................................... 3

ARGUMENT .......................................................................................................................... 5

Relief Should Be Limited to a Declaratory Judgment and Injunctive Relief Tied to the Particular Circumstances of This Case .................................................................................. 5

    I.    Constitutional and Equitable Principles Require That Relief in This Case Be Limited to Prohibiting Enforcement of the August 2018 Demand Letter .......... 6

           A.    Relief That Is Broader Than Necessary to Remedy Plaintiff's Sole Alleged Injury Would Not Be Consistent With Article III Limits or Principles of Equity ................................................................................... 6

           B.    Any Claim for Relief Based on a Hypothetical Future Application of Section 407 to Plaintiff Is Constitutionally and Prudentially Unripe .......... 11

    II.   By Limiting Its Opinion to an As-Applied Determination, the D.C. Circuit Strongly Suggested That Relief Should Be Correspondingly Limited .................. 13

CONCLUSION .................................................................................................................... 14

## INTRODUCTION

Since its enactment by the First Congress, the Copyright Act has required copyright owners to deposit copies of published works with the federal government. The plaintiff in this action, a book publisher, challenged the present version of this statutory requirement following a demand by the Library of Congress's Copyright Office for physical copies of 240 books. The D.C. Circuit held that as applied to the particular circumstances of this case, that demand was inconsistent with the Takings Clause, and has remanded to this Court to fashion appropriate relief.

The sole appropriate remedy here is relief limited to the particular circumstances of this case: namely, a declaration that the Copyright Office's August 2018 demand letter to Plaintiff was unlawful and an injunction prohibiting Defendants from attempting to enforce that demand. An award of relief extending beyond this scope would be unnecessary and inappropriate for multiple reasons. First, constitutional and equitable principles require that relief should be no broader than necessary to remedy Plaintiff's injury. Here, because the sole harm that Plaintiff has demonstrated is traceable to the Copyright Office's demand letter, Plaintiff lacks standing to obtain relief that is not tied to redressing the specific cognizable injury that it has demonstrated, and equitable principles require that permanent relief be narrowly tailored to remedy that injury. Second, any claim for relief that is predicated on a hypothetical future application of the deposit requirement to Plaintiff is not ripe for judicial review. Finally, the narrow scope of the D.C. Circuit's opinion further underscores that the Court's remedy should be limited to addressing the specific set of circumstances presented by this case. Defendants therefore respectfully request that relief awarded by this Court be limited to (1) a declaration that the Copyright Office's August 2018 demand that Plaintiff provide physical copies of 240 books was inconsistent with the Takings Clause; and (2) an injunction prohibiting enforcement of Section 407 with respect to the August 2018 demand.

1

## BACKGROUND[1]

**I.      Statutory and Regulatory Background**

The Copyright Clause of the Constitution provides that "Congress shall have Power . . . To promote the Progress of Science . . . by securing [to Authors] for limited Times . . . the exclusive Right to their . . . Writings." U.S. Const. art. I, § 8, cl. 8. Congress first exercised this authority in 1790 when it established federal copyright protections for written works. *See* Copyright Act of 1790, 1 Stat. 124, 125.

Congress has also required copyright owners to deposit copies of most newly published materials from the first Congress until the present day. *See Valancourt I*, 554 F. Supp. 3d at 29-30. Presently, under Section 407 of the Copyright Act, Congress requires that except as exempted by the Register of Copyrights, "the owner of copyright or of the exclusive right of publication in a work . . . shall deposit [in the U.S. Copyright Office], within three months after the date of . . . publication . . . two complete copies of the best edition" of the published work. 17 U.S.C. § 407(a). If a copyright owner or publisher fails to affirmatively deposit copies of the work with the Copyright Office after publication (and if suitable copies have not otherwise been delivered to the Office through registration under 17 U.S.C. § 408),[2] the Copyright Office can make a written demand for the deposit upon the publisher or copyright owner. *See id.* If a demand has been made,

---

[1] This background section derives largely from this Court's memorandum opinion entering summary judgment for Defendants, *Valancourt Books, LLC v. Perlmutter*, 554 F. Supp. 3d 26 (D.D.C. 2021) ("*Valancourt I*"), and the D.C. Circuit's opinion, *Valancourt Books, LLC v. Garland*, 82 F.4th 1222 (D.C. Cir. 2023) ("*Valancourt II*").

[2] Section 408 of the Copyright Act, requiring a deposit for copyright registration, provides a copyright owner with additional statutory benefits. *See* 17 U.S.C. §§ 408, 411, 412. Copyright owners who deposit copies pursuant to Section 408 generally satisfy their Section 407 obligations as well, but not all copyright owners seek to register their works. As used herein, "deposit requirement" refers solely to Section 407. Plaintiff has not challenged the constitutionality of Section 408.

2

the copyright owner or publisher has three months to comply with the demand before it is subject to fines and costs for the Library to purchase the work. *Id*. § 407(d).[3]

## II.   The Present Action

Plaintiff Valancourt Books, LLC (Valancourt) is an independent press based in Richmond, Virginia, that publishes rare and out-of-print fiction and operates on a print "on-demand" model out of the owners' home. *Valancourt I*, 554 F. Supp. 3d at 30 (citation omitted). In June 2018, Plaintiff received a demand letter from the Copyright Office pursuant to Section 407 that requested one physical copy of the 341 books in its catalog; however, upon determining that some of Valancourt's books consisted entirely of reprinted material from the public domain, the Copyright Office narrowed the number of requested books to 240 in an August 2018 demand letter. *Id*.; *see also* Compl., Ex. D, ECF No. 1-7 (August 9, 2018 demand letter to Plaintiff). Plaintiff filed the instant lawsuit in 2018, alleging that Section 407 violates the Fifth Amendment's Takings Clause and the First Amendment's Free Speech Clause. *See Valancourt I*, 554 F. Supp. 3d at 28.

The parties cross-moved for summary judgment. *See* ECF Nos. 17–23. On July 23, 2021, this Court entered summary judgment for Defendants in a memorandum opinion and order. *See generally Valancourt I*; Order, ECF No. 29. The Court rejected Plaintiff's Fifth Amendment claim, holding that Section 407's deposit requirement was not an unconstitutional taking but a voluntary exchange in return for federal copyright protection. *Valancourt I*, 554 F. Supp. 3d at

---

[3] A copyright owner that believes that it would be burdensome to comply with a written demand can request a grant of "special relief" from the Copyright Office. *See* 37 C.F.R. § 202.19(e). Such special relief can exempt copyright owners from this deposit requirement altogether or can authorize them to deposit a quantity or format of copies of a work different from the default statutory requirement of "two complete copies of the best edition." *See* 17 U.S.C. § 407(a)(1); 37 C.F.R. § 202.19(e)(1). For example, special relief can allow copyright owners to submit an electronic copy of a work rather than a physical deposit. *See Valancourt I*, 554 F. Supp. 3d at 31.

33-39.  The Court also held that Plaintiff's First Amendment claim failed because the deposit requirement does not unduly burden speech.  *Id*. at 39-42.

Plaintiff appealed this Court's decision.  In August 2023, the D.C. Circuit issued an opinion that reversed and remanded with instructions to enter judgment in Plaintiff's favor and to fashion appropriate relief.  *Valancourt II*, 82 F.4th at 1239.  The court determined that as applied to the particular circumstances presented in this case, Section 407's deposit requirement violates the Takings Clause because it allows "the government [to] directly appropriate[] private property for its own use."  *Id*. at 1231 (citation omitted).  The D.C. Circuit rejected the argument that, as applied here, the mandatory deposit requirement was permissible because Plaintiff could have "disavow[ed] copyright protection and thereby avoid[ed] the deposit requirement," *id*. at 1235, explaining that Plaintiff had not been informed of its ability to abandon copyright before it filed suit, *id*. at 1236.

The D.C. Circuit made clear the limited nature of its holding, explaining that its opinion was "tied to the particular circumstances" of this case: namely, "circumstances in which the Copyright Office enforced Section 407 by issuing a demand letter indicating no option other than surrendering the property at issue or paying a fine, and in which Valancourt had no indication from any other source of the existence of a costless option to disavow copyright protection and thereby avoid complying with the sole options described in the demand letter."  *Id*. at 1239.  The court explained that it would "leave it to [this Court] and the parties to fashion relief commensurate with the parameters of [its] resolution."  *Id*.[4]

---

[4] The D.C. Circuit declined to reach Plaintiff's First Amendment challenge because it "conclude[d] that the way the Copyright Office enforced Section 407 works a taking."  *Id*.

4

The D.C. Circuit denied the government's petition for en banc rehearing, and in April 2024, the Solicitor General informed Congress of the Department of Justice's decision not to seek Supreme Court review of the appellate court's decision. April 12, 2024 Letter from Solicitor General Elizabeth B. Prelogar to House Speaker Mike Johnson.[5]

## ARGUMENT

**Relief Should Be Limited to a Declaratory Judgment and Injunctive Relief Tied to the Particular Circumstances of This Case.**

Constitutional, prudential, and equitable principles require that declaratory and injunctive relief be limited to redressing a plaintiff's own cognizable injuries. Here, the sole cognizable injury alleged by Plaintiff results from Defendants' August 2018 demand letter. The remedy accordingly should be limited to (1) a declaration that the Copyright Office's August 2018 demand that Plaintiff provide physical copies of 240 books was inconsistent with the Takings Clause; and (2) an injunction prohibiting the Copyright Office from enforcing Section 407 through its August 2018 demand to Plaintiff. Any broader form of relief would be inconsistent with Article III standing, the ripeness doctrine, and established equitable principles. Furthermore, by limiting the scope of its ruling to an as-applied determination, the D.C. Circuit strongly signaled that the scope of appropriate relief should be correspondingly limited. The Court should therefore limit its award of permanent relief to redressing the particular circumstances presented in this case.

---

[5] https://www.justice.gov/oip/letters-submitted-congress-pursuant-28-usc-%C2%A7-530d

I.   **Constitutional and Equitable Principles Require That Relief in This Case Be Limited to Prohibiting Enforcement of the August 2018 Demand Letter.**

   A.   **Relief That Is Broader Than Necessary to Remedy Plaintiff's Sole Alleged Injury Would Not Be Consistent With Article III Limits or Principles of Equity.**

"Article III of the Constitution limits the exercise of the judicial power to 'Cases' and 'Controversies.'" *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (citation omitted). To establish Article III standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (citation omitted). This principle applies with equal force when considering the remedy to which a prevailing plaintiff is entitled. *Town of Chester*, 581 U.S. at 439 (a plaintiff must establish standing "separately for *each form of relief* sought") (emphasis added) (citation omitted). Because Plaintiff's sole alleged injury is traceable to the August 2018 demand letter, relief must be limited to redressing that injury. Awarding relief broader in scope would be inconsistent with Article III's requirements that injury be imminent and that a party must assert its own legal rights.

To show injury in fact, a plaintiff must demonstrate that it "suffered an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. *2007*) (injury in fact must be "certainly impending and immediate—not remote, speculative, conjectural, or hypothetical") (quoting *Lujan*, 504 U.S. at 560). The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible*

6

future injury are not sufficient." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (citations and internal punctuation omitted).

Here, Plaintiff's sole alleged injury is traceable to the Copyright Office's August 2018 demand letter. That particular injury will be fully redressed by a declaration that the Office's August 2018 demand letter was not consistent with the Takings Clause, and by an injunction prohibiting Defendants from enforcing or relying on that specific demand. Any permanent relief beyond this scope is unnecessary to redress Plaintiff's specific alleged injury and to provide complete relief.

Awarding relief broader than prohibiting enforcement of the August 2018 demand is unnecessary to redress any alleged harm to Plaintiff that is "certainly impending and immediate." *Pub. Citizen*, 489 F.3d at 1293. Defendants have no intention of making another demand on Plaintiff under Section 407, either for any of the works listed in prior demand letters or for any other works published by Plaintiff to date. A party seeking declaratory or injunctive relief must demonstrate that it is "realistically threatened by a repetition of [its] experience." *Haase v. Sessions*, 835 F.2d 902, 910-11 (D.C. Cir. 1987) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). The mere existence of a governmental policy is not enough to allege a threat of repetition; rather, a plaintiff must also show that it is "likely to be subjected to the policy" again. *Id*. at 911; *see also Ellis v. IRS*, 181 F. Supp. 3d 61, 63 (D.D.C. 2012) ("The fact that a plaintiff may have suffered an injury in the past does not indicate that there is a 'real and immediate threat' of it happening again in the future.") (quoting *Lyons*, 461 U.S. at 102). Here, there is no reason to believe that there will be any future controversy between these parties, and awarding relief addressing only a "conjectural" and "hypothetical" set of circumstances would exceed this Court's jurisdiction under Article III. *Spokeo*, 578 U.S. at 339 (citation omitted).

Moreover, generally speaking, a plaintiff lacks standing to seek relief that runs to third parties. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 303 n.17 (D.D.C. 2020) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs") (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)); *see also Gill v. Whitford*, 585 U.S. 48, 66 (2018) (a "plaintiff's remedy must be 'limited to the inadequacy that produced [his] injury in fact'") (citation omitted); *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (rejecting the proposition that a plaintiff "retain[s] standing to challenge the basis for [a challenged] action . . . , apart from any concrete application that threatens imminent harm to [its] interests" as "fly[ing] in the face of Article III's injury-in-fact requirement"). Because a court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," "[a] plaintiff's remedy must be tailored to redress *the plaintiff's* particular injury." *Gill*, 585 U.S. at 72-73 (emphasis added). As explained above, here, that injury would be fully redressed by an order prohibiting the enforcement of the August 2018 demand. To the extent that Plaintiff might seek broader relief, such a request would be inconsistent with Article III's judicial power, which "exists *only* to redress or otherwise protect against injury to the complaining party." *Warth*, 422 U.S. at 499 (emphasis added).

Equitable principles reinforce these limitations by requiring that any injunctive relief be limited to redressing a plaintiff's own injuries stemming from a violation of its own rights. *See Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976) ("Injunctive relief granted to a party in a lawsuit must be framed to remedy the harm claimed by the party."). Paralleling the rule under Article III, the rule in equity is that "judicial remedies should be 'no

more burdensome to the defendant than necessary to provide complete relief' to the plaintiff[]." *Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 296 (D.C. Cir. 2023) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  The D.C. Circuit "ha[s] long held that '[a]n injunction must be narrowly tailored to remedy the specific harm shown.'" *Neb. Dep't of Health & Hum. Servs. v. HHS*, 435 F.3d 326, 330 (D.C. Cir. 2006) (quoting *Aviation Consumer Action Project*, 535 F.2d at 108)).

These principles underscore the propriety of limiting declaratory and injunctive relief to preventing Defendants from enforcing or relying on the August 2018 demand.  Because the sole harm alleged by Plaintiff is traceable to this demand, that harm will be fully redressed by prohibiting Defendants from requiring Plaintiff to comply with the demand.  Broader relief would also be more burdensome than necessary to provide Plaintiff with complete relief.

Established equitable principles also counsel against injunctive relief extending to non-parties where such relief is unnecessary to redress the injury demonstrated by the plaintiff.  *See DHS v. New York*, 140 S. Ct. 599, 600-01 (2020) (Gorsuch, J., concurring) (criticizing the "increasingly common practice of trial courts ordering relief that transcends the cases before them" as "flaw[ed]" because "they direct how the defendant must act toward persons who are not parties to the case"); *Neb. Dep't of Health & Hum. Servs.*, 435 F.3d at 330 (citing *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001), for the proposition that the district court in that case "should not have enjoined [the] agency from applying [the] challenged regulation to any party when '[a]n injunction covering [plaintiff] alone adequately protects it from the feared prosecution'"); *Jean-Baptiste v. Dist. of Columbia*, 958 F. Supp. 2d 37, 50 (D.D.C. 2013) ("[I]f granted, injunctions should be narrowly tailored and should generally apply only to the plaintiff where a class has not been certified.").

As numerous courts and jurists have explained, extending any injunction to non-parties where no class has been certified an inequitable "asymmetr[y]," whereby non-parties can claim the benefit of a favorable ruling but are not bound by a loss. *New York*, 140 S. Ct. at 600 (Gorsuch, J., concurring). Additionally, the availability of non-party injunctions outside of class actions undermines the rule that non-parties cannot assert collateral estoppel as plaintiffs "against the government." *United States v. Mendoza*, 464 U.S. 154, 162 (1984); *see Va. Soc'y for Hum. Life*, 263 F.3d at 393. *Mendoza*'s bar is rendered meaningless if the first party granted a favorable ruling against the government can obtain an injunction that extends to non-parties who would otherwise be forced to relitigate the issue.

Finally, historical practice confirms that non-party injunctions exceed the equitable powers of federal courts. The Supreme Court "has long held that a federal court's authority to fashion equitable relief is ordinarily constrained by the rules of equity known 'at the time of the separation of' this country from Great Britain." *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring) (quoting *Grupo Mexicano de Desarrollo, S. A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999)). That tradition of equity was premised on "providing equitable relief only to parties" because the fundamental role of courts is to "adjudicate the rights of individual[s]." *Trump v. Hawaii*, 585 U.S. 667, 718 (2018) (Thomas, J., concurring) (citation omitted). As a result, "a plaintiff could not sue to vindicate the private rights of someone else." *Id.*; *see also New York*, 140 S. Ct. at 600 (Gorusch, J., concurring).

The application of these principles here does not support extending the scope of declaratory and injunctive relief to cover non-parties. Because Plaintiff has made no showing—nor could it— that such a remedy would be necessary to redress its alleged injury, there is no need to fashion relief that includes parties not before this Court.

10

> **B.     Any Claim for Relief Based on a Hypothetical Future Application of Section 407 to Plaintiff Is Constitutionally and Prudentially Unripe.**

The ripeness doctrine also bars any request by Plaintiff for relief beyond preventing Defendants from enforcing or relying on the August 2018 demand letter. "The ripeness doctrine generally deals with when a federal court can or should decide a case. Part of the doctrine is subsumed into the Article III requirement of standing, which requires a petitioner to allege[,] *inter alia*[,] an injury-in-fact that is imminent or certainly impending." *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (citation omitted); *see also Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (ripeness "shares the constitutional requirement of standing that an injury in fact be certainly impending").

However, "[e]ven if a case is 'constitutionally ripe,' . . . there may also be 'prudential reasons for refusing to exercise jurisdiction.'" *Am. Petrol. Inst.*, 683 F.3d at 386 (citation omitted). "In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and protects the agencies from judicial interference' in an ongoing decision-making process." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Courts "decide whether to defer resolving a case for prudential reasons by 'evaluat[ing] (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 632 (D.C. Cir. 2017) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). "The 'primary focus' of the prudential aspect of the ripeness doctrine is to balance 'the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding

11

unnecessary adjudication and in deciding issues in a concrete setting.'" *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999) (citation omitted).

As explained above, to the extent that Plaintiff seeks relief aimed at redressing hypothetical future applications of Section 407, it fails to satisfy the requirements of Article III standing. For the same reason, any request for such relief does not satisfy the constitutional ripeness requirement.

Nor is such a request prudentially ripe. First, the issue of whether Section 407 might ever be applied to Plaintiff at some unknown future time is not fit for review. A claim for relief is "unripe for judicial review if it depends on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Saline Parents v. Garland*, 88 F.4th 298, 306 (D.C. Cir. 2023) (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)); *see also Nat'l Treasury Emps. Union*, 101 F.3d at 1431 (case was not "fit[ ] for judicial review" because the facts on which the case's resolution depended were not "fully crystalized") (citation omitted). It is wholly speculative—and entirely unlikely—that Plaintiff would ever receive a future demand letter under Section 407. And as stated below, *see infra* part II, the D.C. Circuit's decision was "tied to the particular circumstances" in which Section 407 was applied to Plaintiff here. *Valancourt II*, 82 F.4th at 1239. The D.C. Circuit specifically declined to adjudicate the lawfulness of future applications of Section 407 under different circumstances than those presented here. Any future determination of the constitutionality of such applications will thus depend on the specific factual circumstances under which they arise, and should not be hypothesized in advance by this Court. Second, Plaintiff has not shown that it will suffer any adverse consequences except in the extreme unlikelihood that it were to receive a demand to comply with Section 407 at some unknown future date. To show hardship, a litigant must show "adverse effects of a strictly legal kind." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 809 (citation omitted). There is no indication of any such hardship here.

12

Because Plaintiff will not suffer injury in fact unless an unlikely hypothetical event were to occur, it cannot demonstrate hardship that would warrant review of such an abstract claim. *See Nat. Res. Def. Council, Inc. v. EPA*, 859 F.2d 156, 166 (D.C. Cir. 1988) ("A petitioner cannot show hardship by positing a speculative or hypothetical future harm."). Consequently, any contention that Section 407 could be applied to Plaintiff in the future remains an "abstract disagreement[] over administrative polic[y]," *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807-08, that fails to satisfy the prudential ripeness requirement. It would be manifestly inappropriate to award permanent declaratory or injunctive relief based on such an unripe claim.

## II. By Limiting Its Opinion to an As-Applied Determination, the D.C. Circuit Strongly Suggested That Relief Should Be Correspondingly Limited.

Awarding relief that applies beyond the specific circumstances at issue here would also be inconsistent with the limited scope of the D.C. Circuit's opinion in this case. The D.C. Circuit repeatedly emphasized that its holding was limited to the Copyright Office's particular application of Section 407 to the circumstances of this case. *See Valancourt II*, 82 F.4th at 1226 ("We conclude that Section 407, *as applied* by the Copyright Office *in this case*, worked an unconstitutional taking of Valancourt's property.") (emphasis added); *id*. at 1238-39 (stating that "*in the circumstances*, the Copyright Office's enforcement of Section 407 against Valancourt" was unlawful, and holding only that "*the way* the Copyright Office enforced Section 407 against Valancourt works a taking") (emphasis added). Its decision was "tied to the particular . . . circumstances in which the Copyright Office enforced Section 407," namely, "by issuing a demand letter indicating no option other than surrendering the property at issue or paying a fine, and in which Valancourt had no indication from any other source of the existence of a costless option to disavow copyright protection and thereby avoid complying with the sole options described in the

13

demand letter." *Id*. at 1239. And it stated that it would "leave it to [this Court] and the parties to fashion relief commensurate with the parameters of [its] resolution." *Id*.

In deciding to adjudicate only the constitutionality of the specific application presented in this case, the D.C. Circuit honored the "fundamental and long-standing principle of judicial restraint" that requires federal courts to "avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (collecting cases). The court's limited ruling strongly indicates that it did not consider relief extending beyond the specific circumstances presented by this suit to be necessary to remedy any injury suffered by Plaintiff. *See also United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995) (holding that despite plaintiffs' successful constitutional challenge to a statute, "relief should be limited to the parties before the Court" because, *inter alia*, the "policy of avoiding unnecessary adjudication of constitutional issues . . . counsel[ed] against" a broader determination, given that the government "might advance a different justification" for a differing application of the statute, "thus presenting a different constitutional question than the one we decide today").

## CONCLUSION

For the foregoing reasons, the Court should limit its remedy to (1) a declaration that the Copyright Office's August 2018 demand that Plaintiff provide physical copies of 240 books was inconsistent with the Takings Clause; and (2) an injunction prohibiting the Copyright Office from enforcing Section 407 with respect to the August 2018 demand to Plaintiff.

Dated:  June 7, 2024                                    Respectfully submitted,

                                                        BRIAN M. BOYNTON
                                                        Principal Deputy Assistant Attorney General

                                                        LESLEY FARBY
                                                        Assistant Branch Director

14

    <u>/s/ Daniel Riess</u>
DANIEL RIESS (Texas Bar No. 24037359)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-3098
Daniel.Riess@usdoj.gov
*Attorneys for Defendants*