IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALANCOURT BOOKS, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>SHIRA PERLMUTTER, in her official capacity as Register of Copyrights, United States Copyright Office, *et al.*,<br><br>    *Defendants*. | Civil Action No. 1:18-cv-01922-ABJ |

**PLAINTIFF'S CLOSING MEMORANDUM OF LAW REGARDING REMEDIES**

Robert J. McNamara (DDC Bar # VA065)
Jeffrey Redfern (DC Bar #1018046)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Emails: rmcnamara@ij.org, jredfern@ij.org

*Attorneys for Valancourt Books, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION .............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 1

    I.     The Government Misunderstands Valancourt's Injury. ........................................... 1

    II.    The Government Concedes Valancourt's Substantive Arguments. ....................... 5

    III.   The Court's Equitable Relief Can and Should Extend Beyond Valancourt. .......... 6

CONCLUSION .................................................................................................................................. 7

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Conservation Force v. Salazar*,
    715 F. Supp. 2d 99 (D.D.C. 2010) ................................................................................................3

*District of Columbia v. U.S. Dep't of Agric.*,
    444 F. Supp. 3d 1 (D.D.C. 2020) .................................................................................................. 6

*\*FBI v. Fikre*,
    601 U.S. 234 (2024) ..............................................................................................................2, 3, 4

*Maryland v. King*,
    567 U.S. 1301 (2012) ....................................................................................................................7

*Navegar, Inc. v. United States*,
    103 F.3d 994 (D.C. Cir. 1997) ..................................................................................................... 2

*Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*,
    435 F.3d 326 (D.C. Cir. 2016) ..................................................................................................6, 7

*Price v. Barr*,
    514 F. Supp. 3d 171 (D.D.C. 2021), *rev'd on other grounds,* 45 F.4th 1059 (D.C. Cir. 2022) .... 4

*Salazar v. Buono*,
    559 U.S. 700 (2010) ..................................................................................................................... 6

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ..................................................................................................................... 4

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) ......................................................................................................................3

*Trump v. Int'l Refugee Assistance Proj.*,
    582 U.S. 571 (2017) ..................................................................................................................... 6

*Valancourt Books, LLC v. Garland*,
    82 F.4th 1222 (D.C. Cir. 2023) .................................................................................................... 6

**STATUTES**

17 U.S.C. § 407 ................................................................................................................... *passim*

**INTRODUCTION**

Plaintiff Valancourt Books won a pre-enforcement challenge to the enforcement of 17 U.S.C. § 407, and it is therefore entitled to final relief protecting it from enforcement of 17 U.S.C. § 407. *See generally* Plaintiff's Opening Mem. of Law Regarding Remedies (ECF 37) ("Opening Br."). The government's response, which insists (without reference to the summary judgment record) that the Court only has jurisdiction to enjoin a particular letter sent by a particular government official on a particular day, is wrong on both the facts and the law, and Valancourt's proposed order should therefore be entered in full.

**ARGUMENT**

Part I, below, explains that the government fails to understand Valancourt's constitutional injury, which was that it *expected enforcement of § 407*, not that it *received a letter*. Part II explains that the government has failed to dispute Valancourt's substantive explanation of the D.C. Circuit's holding in this case. Finally, Part III explains that the government is wrong to suggest that this Court lacks jurisdiction to enter relief that would flow to any party other than Valancourt.

**I.    The Government Misunderstands Valancourt's Injury.**

The government agrees that Valancourt is entitled to an injunction that fully remedies its injury, but it misunderstands the nature of that injury. In the government's view, the only "specific harm shown by the plaintiff in this case results solely from the application of a specific demand" for property. Defs.' Closing Mem. Regarding Remedies (ECF 38) ("Defs.' Closing Mem.") 2. But Valancourt's injury is not that it received a letter from the government. Its injury is that it reasonably feared the government would enforce 17 U.S.C. § 407 against it. *See, e.g.*, Compl. (ECF 1) 13 at ¶ 64. The government's threat letter is simply *evidence* that this feared enforcement was

1

likely. In other words, the government's "threat of [enforcement] provide[d] the foundation for justiciability as a constitutional and prudential matter." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997).[1] That is why Valancourt asked for relief from the requirements of § 407, not relief from any one piece of correspondence. Compl. 16.

This distinction matters because the government's threat letter, standing alone, might not have proven enough to sustain Valancourt's standing. If the summary-judgment record showed the letter was wrongly sent—that government policy actually exempted Valancourt from § 407— then the government might have met its "formidable burden" to prove that its challenged "practice cannot reasonably be expected to recur" and Valancourt might not have had standing to seek an injunction at all. *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quotation marks omitted).

But the record reveals the opposite. The record shows that Valancourt's demand letter was generated pursuant to a Copyright Office policy that dictates what sort of books that office demands under § 407. Opening Br. 7 (citing Joint Stipulations of Fact (ECF 17-3) ("Joint Stipulations") ¶ 52). Staff members at the Copyright Office used that policy to determine that Valancourt should be subject to enforcement. *Id.* (citing Joint Stipulations of Fact ¶ 70). And so Valancourt's fear of enforcement was entirely reasonable—not just because it had received a threat letter in August 2018, but because the record shows it reasonably feared enforcement of § 407. *Id.*

The government ignores this record evidence. Instead, it briefs this case as if it were on a motion to dismiss, repeatedly claiming that Valancourt "alleges" various things. *E.g.*, Defs.'

---

[1] The government's final brief makes repeated references to Valancourt's "standing" or to "ripeness," but it does not appear to contest that, at the outset of this case, Valancourt had standing to challenge the enforcement of § 407. Defs.' Closing Mem. 3. Instead, its argument seems to be that Valancourt will no longer have standing once the August 2018 letter is withdrawn because the government no longer intends to enforce § 407 against it. That argument sounds in mootness rather than standing or ripeness. Either way, as discussed below, it is wrong.

2

Closing Mem. 1, 4, 5. To be clear: At this stage of the proceedings, Valancourt alleges nothing. Valancourt has proven things. Specifically, it has proven that the government targeted it for enforcement under § 407 based on its still-extant policy of targeting publishers like Valancourt.

The government asks the Court to ignore this record and instead credit its (unsworn) assertion that it no longer plans to enforce § 407 against Valancourt. That is insufficient. If the government wants to establish that Valancourt need no longer fear enforcement, it must provide evidence making it "'absolutely clear' that it could not revert to" its policy of enforcing the law against Valancourt. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017). That is a "formidable burden." *Fikre*, 601 U.S. at 241. And it is one that must be met with evidence, not mere assertions in a brief. *Cf. Conservation Force v. Salazar*, 715 F. Supp. 2d 99, 106 n.9 (D.D.C. 2010) ("mere arguments of counsel . . . are not evidence" (quotation marks omitted)).

Even when the government provides evidence, though, that evidence must provide far more than the assertions the government offers here. Look no further than the Supreme Court's recent decision in *Fikre*, which is on all fours. There, the plaintiff initially had standing because he alleged the government placed him on the No Fly List. *Fikre*, 601 U.S. at 237. Here, Valancourt initially had standing because the record showed the government intended to enforce § 407 against it. Joint Stipulations ¶¶ 71–73. There, the government submitted testimony from an official promising that the government no longer had any present intention of placing the plaintiff on the No Fly List "based on the currently available information." *Fikre*, 601 U.S. at 239–40. Here, the government has asserted (without citation) that the government no longer wishes to enforce § 407 as to any "works published by [Valancourt] **to date**." *See, e.g.*, Defs.' Closing Mem. 4 (emphasis added). There, the plaintiff still had standing because he alleged he had been placed on the No Fly

List as a result of his activities—attending a particular mosque or refusing to become a government informant—and nothing in the record guaranteed he would not be placed on the No Fly List if he did those things again. *Fikre*, 601 U.S. at 242. So too here, where Valancourt still has standing because the record shows that it was subject to enforcement under § 407 as a result of its activities—publishing books with particular content—and nothing in the government's assertion that it won't enforce § 407 against *past* Valancourt books means Valancourt's future books are similarly immune. Joint Stipulations ¶¶ 51–56. Indeed, the only real difference between the two cases is that in *Fikre* the government mustered evidence. Here, it hasn't bothered.

  The government cites no case in which a court has held that a record like this one is not enough to support an injunction against future enforcement. And no wonder: If the government's theory were correct, courts could never enjoin the enforcement of a law at all. The government could threaten enforcement, litigate the constitutionality of enforcement, and then (after it lost, but before final judgment was entered) announce that it no longer wanted to enforce the law after all. But courts *do* enter injunctions in pre-enforcement challenges. And when they do, they enjoin *the enforcement of a law or policy*. They do not enjoin only the threat that originally gave rise to standing, leaving the government free to threaten enforcement again on another day. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (holding that "alleged threats of prosecution" created standing to "challenge . . . those specific provisions of state law which have provided the basis for threats of criminal prosecution"); *accord Price v. Barr*, 514 F. Supp. 3d 171, 183, 194 (D.D.C. 2021) (finding "credible threat of prosecution under [54 U.S.C.] § 100905" and "enjoining [the relevant requirements under] § 100905"), *rev'd on other grounds*, 45 F.4th 1059 (D.C. Cir. 2022). The same should happen here: The government's threat letter gave Valancourt standing to challenge the

4

enforcement of § 407, and the Court's injunction should therefore protect it from that enforcement, not from the letter.

## II. The Government Concedes Valancourt's Substantive Arguments.

Valancourt's opening brief explained that the D.C. Circuit's holding that enforcement of § 407 in these particular circumstances violates the Takings Clause means the Court should issue a final order preventing continued enforcement of § 407 in those circumstances. Opening Br. 4.

The government waives any substantive response about the scope of the D.C. Circuit's holding. Instead, it argues exclusively that the Court need not reach any of Valancourt's arguments because they concern only "hypothetical" future attempts to enforce § 407. Defs.' Closing Mem. 1–7. That is wrong. Valancourt's arguments are about *this* attempt to enforce § 407, which is why the government raised (and the D.C. Circuit rejected) all of these arguments in the course of resolving the constitutionality of that attempted enforcement.

For example, the government tried to justify its demand for Valancourt's property *in this case* by arguing that it had offered to accept electronic copies in lieu of physical ones. Opening Br. 11. The D.C. Circuit rejected that argument. *Id.* The government does not contend otherwise. Similarly, *in this case*, the government tried to justify its demand for Valancourt's property by pointing out that Valancourt had voluntarily acquired copyright via contract. Opening Br. 9–10. The D.C. Circuit rejected that argument. *Id.* The government does not contend otherwise. And, *in this case*, the government tried to justify its demand for Valancourt's property by pointing to steps Valancourt could have taken to avoid mandatory deposit. Opening Br. 11–13. The D.C. Circuit rejected that argument, too, withholding judgment only as to a hypothetical alternative that would be truly "costless." *Id.* The government, again, does not contend otherwise.

5

These are not hypotheticals about the future. They are descriptions of the "circumstances" of this case. *Cf. Valancourt Books LLC v. Garland*, 82 F.4th 1222, 1238 (D.C. Cir. 2023) (referencing the "circumstances" of this case as including, among other things, Valancourt's inclusion of copyright notices in its books). And the D.C. Circuit squarely held that enforcing § 407 *in these circumstances* would violate the Takings Clause. This Court's final judgment should say the same.

**III. The Court's Equitable Relief Can and Should Extend Beyond Valancourt.**

Finally, the government errs by suggesting either that Article III prevents this Court from entering relief that extends beyond Valancourt itself or that the government has an interest in engaging in unequivocally unconstitutional conduct. Each suggestion is wrong.

Begin with jurisdiction. The government argues this Court has no power to enter relief that would affect parties other than Valancourt. But another judge of this district has already explained this argument is "not just wrong but almost comically so[.]" *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 54–55 (D.D.C. 2020). A party must show standing (as Valancourt has), but after that "an argument about the scope of [an] injunction 'is not an argument about standing but about the merits[.]'" *Id.* at 55 (quoting *Salazar v. Buono*, 559 U.S. 700, 713 (2010) (plurality)). So determining the scope of equitable relief "is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Id.* (quoting *Trump v. Int'l Refugee Assistance Proj.*, 582 U.S. 571, 579 (2017)); *accord id.* (documenting the "commonplace" granting of relief that affects non-parties).

The government has no case to the contrary. It relies on *Nebraska Department of Health & Human Services v. Department of Health & Human Services*, 435 F.3d 326 (D.C. Cir. 2016), which

says the injunction in that case should not have extended beyond the named plaintiff. *See* Defs.' Closing Mem. 2, 3 & n.1. But the problem in *Nebraska Health* was that the plaintiff's complaint asked only for as-applied relief and "[n]owhere . . . requested [facial relief], presumably for good and sufficient reasons." 435 F.3d at 330. If a party seeks only as-applied relief, a court should of course award only as-applied relief. Valancourt expressly asked for more. Compl. 16. Nothing in *Nebraska Health* says that Article III forbids this Court from granting that request.

Since this Court *can* issue relief that extends beyond Valancourt, then, the only question is whether, on the equities of this case, it *should*. And here the government fares no better. It, again, relies principally on cases about preliminary relief in cases where the constitutionality of the government's actions is uncertain, leaning heavily on the Chief Justice's in-chambers opinion in *Maryland v. King*. Defs.' Closing Mem. 5 (quoting 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). But *King* is about whether to issue a stay of an injunction prior to certiorari, when the constitutionality of the statute remains uncertain. *Id.* It says nothing about how the equities shake out when (as here) the government's conduct has been conclusively declared unconstitutional by an appellate court that will have jurisdiction over any future attempts to engage in the same conduct. *See* Opening Br. 13. And, again, the government has no serious argument that it could engage in some future enforcement of § 407 that would not be directly controlled by the D.C. Circuit's opinion in this case. Given that, there can be no conceivable burden to the government in an injunction ordering it to obey the appellate decision in which it has already acquiesced.

## CONCLUSION

Valancourt's Proposed Final Order (ECF 37-1) should be entered in full.

Dated August 16, 2024.

Respectfully submitted,

/s/ *Robert J. McNamara*
Robert J. McNamara (DDC Bar # VA065)
Jeffrey Redfern (DC Bar #1018046)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Emails: rmcnamara@ij.org, jredfern@ij.org

*Attorneys for Valancourt Books, LLC*